EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
AMBER N. WIPFLER, State Bar No. 238484
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5721
Fax: (415) 703-5843
Email: Amber.Wipfler@doj.ca.gov

Attorneys for Respondent Warden B. Curry

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SYLVESTER STRONG,**<br>Petitioner,<br>**v.**<br>**BEN CURRY, Warden,**<br>Respondent. | C07-4927 SI<br>**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**<br>Judge: The Honorable Susan Illston |

# TABLE OF CONTENTS


| | Page |
|---|---|
| INTRODUCTION | 1 |
| ANSWER TO THE ORDER TO SHOW CAUSE | 2 |
| MEMORANDUM OF POINTS AND AUTHORITIES | 7 |
| ARGUMENT | 7 |
| THE STATE COURTS' DENIALS OF PETITIONER'S HABEAS CLAIMS WERE NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS. | 7 |
| A. The State Court Decisions Were Not Contrary to or an Unreasonable Interpretation of Clearly Established Supreme Court Law. | 8 |
| 1. Petitioner received all process due under the only United States Supreme Court law addressing due process in the context of parole suitability. | 8 |
| 2. The Ninth Circuit's some-evidence test is not clearly established Supreme Court law. | 9 |
| 3. Even if the some-evidence standard was clearly established federal law in the parole context, the standard was correctly applied by the state courts. | 11 |
| 4. The Governor may rely on static factors to deny parole. | 11 |
| 5. The *Apprendi-Blakely* rule does not apply to Petitioner's case. | 12 |
| B. The State Court Decisions Upholding the Governor's Parole Denial Were Based on a Reasonable Interpretation of the Facts. | 13 |
| CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page

**Cases**


*Bd. of Pardons v. Allen*
482 U.S. 369 (1987 — 5

*Biggs v. Terhune*
334 F.3d 910 (9th Cir. 2003) — 12

*Blakely v. Washington*
542 U.S. 296 (2004) — 12, 13, 14

*Carey v. Musladin*
___ U.S. ___, 127 S. Ct. 649 (2006) — 6, 9, 10

*Crater v. Galaza*
491 F.3d 119 (9th Cir. 2007) — 9

*Foote v. Del Papa*
492 F.3d 1026 (9th Cir. 2007) — 9, 12

*Gagnon v. Scarpelli*
411 U.S. 778 (1973) — 10

*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*
442 U.S. 1 (1979) — 5, 6, 8, 10, 14

*Hayward v. Marshall*
___ F.3d ___, 2008 WL 43716
(9th Cir. Jan. 3, 2008) (pet'n. for rehr'g. pending) — 12

*Himes v. Thompson*
336 F.3d 848 (9th Cir. 2003) — 7

*In re Dannenberg*
34 Cal. 4th 1061 (2005) — 5

*Irons v. Carey*
505 F.3d 846 (2007) — 9

*Johnson v. Zerbst*
304 U.S. 458 (1938) — 7

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005) — 13

*Kane v. Garcia Espitia*
546 U.S. 9 (2005) — 9, 12

*Maynard v. Cartwright*
486 U.S. 356 (1998) — 8

**TABLE OF AUTHORITIES (continued)**


| | Page |
|---|---|
| *Miller-El v. Cockrell* 573 U.S. 322 (2003) | 10 |
| *Morrissey v. Brewer* 408 U.S. 471 (1972) | 10 |
| *Nguyen v. Garcia* 477 F.3d 716 (9th Cir. 2007) | 9, 12 |
| *Plumlee v. Masto* ___ F.3d ___, 2008 WL 151273 at *6 (9th Cir. 2008) | 8, 12 |
| *Sandin v. Connor* 515 U.S. 472 (1995) | 5 |
| *Sass v. California Board of Prison Terms* 461 F.3d 1123 (9th Cir. 2006) | 5, 6 |
| *Stenson v. Lambert* 504 F.3d 873 (9th Cir. 2007) | 9, 12 |
| *Superintendent v. Hill* 472 U.S. 445 (1985) | 6 |
| *Wilkinson v. Austin* 545 U.S. 2384 (2005) | 8 |
| *Williams (Terry) v. Taylor* 529 U.S. 362 (2000) | 8 |
| *Wolff v. McDonnell* 418 U.S. 539 (1974) | 10 |
| *Ylst v. Nunnemaker* 501 U.S. 797 (1991) | 7 |


**Regulations**


| | |
|---|---|
| California Code of Regulations, Title 15 | |
| § 2402 | 11 |
| § 2402(c)(1) | 6 |


**Statutes**


| | |
|---|---|
| 28 United States Code | |
| § 2254(d)(1-2) | 8 |
| § 2244(d)(1) | 7 |
| § 2254(d)(2) | 13 |
| § 2254(e)(1) | 13 |

## TABLE OF AUTHORITIES (continued)


| | Page |
|---|---|
| California Penal Code | |
| § 190(a) | 13 |
| § 3041(b) | 6 |


**Other Authorities**


| | |
|---|---|
| Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) | 5, 6, 8, 11 |

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
AMBER N. WIPFLER, State Bar No. 238484
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5721
Fax: (415) 703-5843
Email: Amber.Wipfler@doj.ca.gov

Attorneys for Respondent Warden B. Curry

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SYLVESTER STRONG,** Petitioner, v. **BEN CURRY, Warden,** Respondent. | C07-4927 SI<br>**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**<br>Judge: The Honorable Susan Illston |

## INTRODUCTION

In a petition for writ of habeas corpus, Petitioner Sylvester Strong alleges that Governor Arnold Schwarzenegger unconstitutionally reversed his 2006 parole grant. Petitioner, who is currently serving an indeterminate life sentence for the murder of his wife, alleges that due process precludes the Governor from relying on the commitment offense to deny parole, and that he is being punished for a crime greater than that of which he was convicted. On November 14, 2007, this Court issued an order to show cause. Respondent Warden B. Curry answers as follows:

**ANSWER TO THE ORDER TO SHOW CAUSE**

In response to the petition for writ of habeas corpus dated September 21, 2007, Respondent admits, denies, and alleges the following:

1. Petitioner is in the lawful custody of the California Department of Corrections and Rehabilitation following his October 25, 1988 conviction of second degree murder and assault with a deadly weapon. (Ex. A, Abstract of Judgment.) He is currently serving an indeterminate term of eighteen years to life. (Ex. B, Appellate Court Judgment at 2.) Petitioner does not challenge his underlying conviction in the current proceeding.

2. On December 10, 1987, Petitioner telephoned his ex-wife, victim Dianna Strong, to ask her for money to support his cocaine habit. (Ex. C, Probation Officer's Report, p. 2.) Ms. Strong told Petitioner that she did not have any money to give him. (*Id.*) A short time later, Petitioner knocked at Ms. Strong's door, but she refused to open it, as she had a restraining order against Petitioner which forbade him from entering her home. (*Id.* at 3.) Petitioner then rammed his body through the door with such force that the deadbolt flew ten feet down the hallway, and confronted the victim, with a seven-inch kitchen knife. (*Id.* at 3, 4.) When he saw that victim Lavelle Jones, Ms. Strong's landscaper, was also in the house, Petitioner accused Mr. Jones of "going with his wife" and told Ms. Strong, "Bitch, I am going to kill you." (*Id.* at 3.) Ms. Strong tried to run away, but Petitioner grabbed her and began beating her with his hands. (*Id.*) Although Ms. Strong begged Petitioner not to hurt her, Petitioner stabbed her, then ran after Mr. Jones and slashed at him, cutting Mr. Jones's hand. (*Id.*; Ex. D, District Attorney's Letter.) After Mr. Jones's escape, Petitioner returned to Ms. Strong, who was staggering toward the front door, and stabbed her through the neck, piercing her jugular vein and killing her. (Ex. D at 8.) An autopsy later revealed three separate stab wounds to Ms. Strong's body: a wound through the left hand, a wound to the left thumb, and a wound passing fully through the jugular vein. (*Id.* at 7.)

3. Respondent affirmatively alleges that Petitioner had a lengthy history of abusing Ms. Strong. Two to three years before the murder, Petitioner began abusing cocaine, which brought his family to financial ruin. (Ex. D.) He depleted their savings account, passed checks from Ms.

Strong's personal account, and sold her household appliances and jewelry in order to buy drugs. (*Id.*) Petitioner then became physically abusive toward his wife, and family and friends were aware of many instances of violence ranging from slaps and punches to the use of knives and guns. (*Id.*) On one occasion, Petitioner tried to pour gasoline on Ms. Strong and light her on fire, in the presence of their five-year-old son. (*Id.* at 4, Ex. C at 5.) He also made numerous comments to other people about how he was going to kill Ms. Strong because she refused to give him money. (Ex. D at 4.) Ms. Strong enrolled her husband in a live-in drug abuse rehabilitation program, but after he refused to complete it and was arrested for narcotics trafficking, she instituted divorce proceedings. (*Id.* at 2.) Petitioner continued to physically abuse Ms. Strong until she filed a restraining order against him and the divorce was complete. (*Id.* at 4-5.) Less than a month after their divorce became final, Petitioner broke into Ms. Strong's house and killed her. (*Id.* at 5.) This led the appellate court to note that Petitioner displayed a "year-long <u>course of violent conduct</u>" (emphasis in original) and that "[b]y the time he finally murdered her, there was nothing unusual about his domestic problems or his resorting to violence." (Ex. B at 8.)

4. Respondent affirmatively alleges that before committing murder, Petitioner was arrested and convicted of battery and infliction of corporal injury, both against Ms. Strong. (Ex. C at 6-7.) The first conviction involved Petitioner striking Ms. Strong in the eye, and then telling the arresting officer that he did not touch her and that "the next time you (the police) come out, it will be for something." (*Id.*) The second conviction resulted from Petitioner punching Ms. Strong in the face several times. (*Id.* at 7.) On that occasion, the reporting officers noted that Ms. Strong's face was completely swollen and puffy, and she was cut and bleeding below her left eye. (*Id.* at 7.)

5. Respondent affirmatively alleges that at his 2006 parole consideration hearing, Petitioner insisted that the target of his knife attack was Mr. Jones, not Ms. Strong. Petitioner further claimed that Mr. Jones started the fight by striking him, and that he picked up the knife in response to the attack from a "larger" man. (Ex. E, Parole Hearing Transcript at 23.) According to Petitioner, "if Mr. Jones had just left there wouldn't have been no confrontation whatsoever." (*Id.* at 41.)

6. Respondent affirmatively alleges that at his 2006 parole consideration hearing, Petitioner claimed that he violated the restraining order and broke down Ms. Strong's door because he hoped to speak with her about reconciliation. (Ex. E at 27.)

7. Respondent affirmatively alleges that at his 2006 parole consideration hearing, Petitioner claimed to have laid hands on Ms. Strong "three or four" times. (Ex. E at 34.)

8. Respondent affirmatively alleges that while incarcerated, Petitioner has had two disciplinary violations for disruptive behavior and threatening staff. (Ex. E at 81.) Petitioner also admitted to using marijuana in 1993, although he was not caught. (*Id.* at 70.)

9. Respondent affirmatively alleges that the District Attorney of Fresno County opposed Petitioner's release on parole. (Ex. E at 55-56.)

10. Respondent admits that at his May 31, 2006 parole consideration hearing, the Board of Parole Hearings determined that Petitioner would not pose an unreasonable risk of danger to society and found him suitable for parole. (Ex. E at 99-114.) The Board determined that Petitioner had demonstrated "maturation, growth, [and] greater understanding" of his crime, and that "[u]ntil his instant offense [Petitioner] had a stable social history as exhibited by reasonable, stable relationships with others." (Ex. E at 99.)

11. Respondent admits that on October 26, 2006, the Governor invoked his authority under the state constitution to reverse Petitioner's parole grant. (Ex. F, Reversal Letter.) The Governor recognized that Petitioner had participated in Narcotics Anonymous and other self-help programs, but found that the gravity of the commitment offense, including the dispassionate and arguably premeditated manner of the crime, and extensive abuse perpetrated by Petitioner on Ms. Strong outweighed any factors tending to show suitability for release. (*Id.* at 3.) The Governor also determined that Petitioner was lacking in remorse and acceptance of responsibility, as seen through his insistence that the intended target of the knife attack was Mr. Jones and not Ms. Strong. (*Id.*)

12. Respondent admits that on April 6, 2006, the Fresno County Superior Court denied Petitioner's habeas petition; however, the petition did not address the claims put forth in the

current petition. (Ex. G, Superior Court Petition and Denial.[1])

13. Respondent admits that on May 24, 2007, the California Court of Appeal summarily denied Petitioner's petition for writ of habeas corpus, in which he alleged the same general causes of action as in the current petition. (Ex. H, Appellate Court Petition and Denial.)

14. Respondent admits that on August 8, 2007, the California Supreme Court summarily denied Petitioner's request for review, in which he alleged the same general causes of action as in the current petition. (Ex. I, Supreme Court Petition and Denial.) Thus, Respondent admits that Petitioner has exhausted his state court remedies as to the claims raised in the current petition. Respondent denies that Petitioner has exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond the review of his 2006 parole reversal.

15. Respondent denies that Petitioner has a federally protected liberty interest in parole; hence, Petitioner fails to assert a basis for federal jurisdiction. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979); *Bd. of Pardons v. Allen*, 482 U.S. 369, 374 (1987) (no federal liberty interest without an expectation of early release); *In re Dannenberg*, 34 Cal. 4th 1061, 1087 (no expectation of early release in California); *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (serving a contemplated sentence is not a significant or atypical hardship). Respondent acknowledges that the Ninth Circuit came to the opposite conclusion in *Sass v. California Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), but preserves the argument.

16. Respondent denies that the state court denials of habeas corpus relief were contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law, or that the denials were based on an unreasonable interpretation of facts in light of the evidence presented. Petitioner therefore fails to make a case for relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).

17. Respondent affirmatively alleges that Petitioner had an opportunity to present his case,

---

1. To cut down on volume and avoid repetition, Respondent has omitted the exhibits attached to Petitioner's state court petitions. These exhibits can be provided upon the Court's request.

and that the Governor provided him with a detailed explanation as to why he was denied parole. Thus, Petitioner received all process due under *Greenholtz,* the only clearly established Supreme Court law regarding the due process rights of inmates at parole consideration hearings.

18. Respondent affirmatively alleges that the Governor conducted an individualized assessment of Petitioner's parole suitability and considered all relevant and reliable evidence before it.

19. Respondent denies that this Court must review Petitioner's parole denial under the some-evidence standard. In *Carey v. Musladin,* ___ U.S. ___, 127 S. Ct. 649, 653 (2006), the United States Supreme Court emphasized that under AEDPA, only Supreme Court holdings regarding the specific issue presented may be used to overturn valid state court decisions. As no clearly established Supreme Court law provides that a parole denial must be supported by some evidence, this Court need not review the current matter under the some-evidence standard.

20. Respondent affirmatively alleges that if the some-evidence standard does apply to the review of parole denials, the proper standard is that found in *Superintendent v. Hill,* 472 U.S. 445, 455 (1985), which requires that only a "modicum of evidence" support the decision to deny parole. Respondent affirmatively alleges that under this standard, some evidence supports the Governor's parole reversal.

21. Respondent denies that this Court must make an independent determination of whether Petitioner currently poses an unreasonable risk of danger to society in order to uphold the state court decisions denying parole.

22. Respondent denies that the Governor relied on immutable factors to deny parole, as the decision was based in part on Petitioner's failure to demonstrate remorse or accept responsibility for the commitment offense. (Ex. F at 3.) Respondent affirmatively alleges that the Governor properly considered the gravity of Petitioner's commitment offense, as required under California Penal Code section 3041(b) and California Code of Regulations title 15, sections 2402(b), (c)(1)-(2). Respondent further affirmatively alleges that federal due process does not preclude the Governor from relying on static factors to deny parole. *Sass*, 461 F.3d at 1129.

23. Respondent denies that Petitioner is being punished for a crime greater than that to

which he pled no contest, as his sentence for second degree murder clearly contemplated an indeterminate life sentence. (Ex. A, B.)

24. Respondent denies that the Governor violated Petitioner's due process rights by reversing his 2006 parole grant.

25. Respondent admits that Petitioner's claims are timely under 28 U.S.C. § 2244(d)(1), and that the petition is not barred by the non-retroactivity doctrine.

26. Respondent denies that an evidentiary hearing is necessary in this matter.

27. Respondent affirmatively alleges that Petitioner fails to state or establish any grounds for habeas corpus relief.

28. Except as expressly admitted above, Respondent denies, generally and specifically, each allegation of the petition, and specifically denies that Petitioner's administrative, statutory, or constitutional rights have been violated in any way.

Accordingly, Respondent respectfully requests that the petition for writ of habeas corpus be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

### THE STATE COURTS' DENIALS OF PETITIONER'S HABEAS CLAIMS WERE NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.

When, as here, the California Supreme Court denies a petition for review without comment, the federal court must look to the last reasoned decision as the basis for the state court's judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991). However, the only reasoned decision in this case addressed claims not made in the current petition. Accordingly, the reviewing court must independently review the record to determine whether the state court decisions were a reasonable application of clearly established federal law. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Because there is nothing in the record to indicate that the state court decisions denying habeas relief were either contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable interpretation of the facts, the

provisions of AEDPA mandate that Petitioner's claim for habeas relief be denied. 28 U.S.C. §2254(d)(1-2).

### A. The State Court Decisions Were Not Contrary to or an Unreasonable Interpretation of Clearly Established Supreme Court Law.

The first standard of AEDPA is that a state court habeas decision may not be overturned unless it is contrary to, or an unreasonable interpretation of, clearly established federal law. "Clearly established federal law" refers to "the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412 (2000). As such, for purposes of AEDPA, "[w]hat matters are the holdings of the Supreme Court, not the holdings of lower federal courts." *Plumlee v. Masto*, ___ F.3d ___, 2008 WL 151273 at *6 (9th Cir. 2008) (attached as Ex. G). Petitioner, however, asks this Court to overturn three valid state court decisions based on Ninth Circuit dicta. Because AEDPA does not permit such a result, and because state court decisions did not violate clearly established Supreme Court law, the Petition must be denied.

#### 1. Petitioner received all process due under the only United States Supreme Court law addressing due process in the context of parole suitability.

It is undisputed that *Greenholtz*, 442 U.S. 1, is the only Supreme Court decision addressing due process in the context of parole consideration hearings. *Greenholtz* specifically rejected the idea that the parole authority must specify particular evidence to support its decision, and held that the only process due an inmate at a parole consideration is first, an opportunity to be heard, and second, if parole is denied, an explanation for the denial. *Id.* at 16. Thus, as a matter of clearly established Supreme Court law, a challenge to a parole decision will fail if the inmate has received the protections required under *Greenholtz*. *See Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1998); *Wilkinson v. Austin*, 545 U.S. 2384, 2397 (2005). Because Petitioner received both of these protections, and does not argue otherwise, he received all process due under clearly established Supreme Court law. Accordingly, the state court decision upholding the Governor's parole reversal is not contrary to clearly established federal law, and Petitioner is not entitled to habeas relief.

**2. The Ninth Circuit's some-evidence test is not clearly established Supreme Court law.**

Petitioner asks this Court to follow the Ninth Circuit's erroneous holding that clearly established federal law requires a parole decision to be supported by some evidence. *Irons v. Carey*, 505 F.3d 846, 850-51 (2007). This standard stems from the decision in *Superintendent v. Hill*, 472 U.S. 445, 455-56, which provides that some evidence must support the decision of a prison disciplinary board to revoke good-time credits. In *Irons*, the Ninth Circuit took the some-evidence standard from the prison disciplinary context, applied it to the parole consideration context, and deemed this new application "clearly established Supreme Court law" for the purposes of AEDPA.

In the last two years, the Supreme Court has made it clear that circuit courts may not import a federal standard used for one set of circumstances into an entirely different set of circumstances under the guise of "clearly established federal law." In *Musladin*, the Supreme Court overturned the Ninth Circuit's determination that a prejudice test regarding one type of case could was the clearly established standard of review used for a similar but factually distinct case. In doing so, the *Musladin* court held that clearly established federal law refers only to the holdings of the Supreme Court on the specific issue presented. *Musladin*, ___ U.S. ___, 127 S. Ct. at 653; *see also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (prisoner denied access to law library has no relief under AEDPA absent a Supreme Court decision addressing that issue). The Ninth Circuit has affirmed this principle in *Nguyen v. Garcia*, 477 F.3d 716, 718, 727 (9th Cir. 2007), *Crater v. Galaza*, 491 F.3d 119, 1126, n. 8 (9th Cir. 2007), *Foote v. Del Papa*, 492 F.3d 1026, 1029-30 (9th Cir. 2007), *Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir. 2007); and *Plumlee*, ___ F.3d ___, 2008 WL 151273 at *6, all of which acknowledge that decisions by courts other than the Supreme Court are non-dispositive under AEDPA standards.

Contrary to the holding in *Irons*, a prison disciplinary hearing and a parole consideration hearing are not identical, and thus not subject to the same level of judicial review. Although both hearings can affect the duration of an inmate's confinement, only prison disciplinary hearings involve a finding of guilt; consequently, the process due in disciplinary hearings is greater than

that required in parole hearings. *Greenholtz*, 442 U.S. at 15-16. In fact, the *Greenholtz* court specifically distinguished a parole consideration hearing from a prison disciplinary hearing, stating that "[p]rocedures designed to elicit specific facts, such as those required in *Morrissey*, *Gagnon*, and *Wolff* are not necessarily appropriate" in a parole suitability determination.[2] *Id.* at 14. While disciplinary hearings are adversarial proceedings, "the parole-release decision . . . is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." *Id.* at 9-10. Thus, unlike a prison disciplinary hearing, in a parole consideration hearing "there is no set of facts which, if shown, mandate a decision favorable to the individual." *Id.* at 10. It follows that the two types of hearing are not the same, and a Supreme Court decision applicable to one does not apply to the other. *Musladin*, ___ U.S. ___, 127 S. Ct. at 653. As such, Petitioner is entitled only to the due process protections outlined in *Greenholtz*, and this Court need not review the basis of the Governor's decision under the some-evidence standard.

Any argument that due process requires a more stringent standard of review than that provided in *Greenholtz* is without merit. The California courts have already evaluated the substantive merits of Petitioner's claims. The absence of further evidentiary review does not diminish Petitioner's due process rights; rather, it merely defers to the state courts' evaluation of those rights, consistent with AEDPA's stated purpose of "further[ing] comity, finality, and federalism." *Miller-El v. Cockrell*, 573 U.S. 322, 337 (2003).

Thus, Petitioner is entitled to only the protections provided in *Greenholtz*, the only clearly established federal law describing the process due at a parole consideration hearing. Because he received these protections, the state court decisions upholding his the Governor's parole reversal are not contrary to clearly established federal law.

/ / /

---

2. *See Morrissey v. Brewer*, 408 U.S. 471 (1972) (establishing process due in parole revocation hearings); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (establishing process due in probation revocation hearings); *Wolff v. McDonnell*, 418 U.S. 539 (1974) (establishing process due in prison disciplinary hearings).

**3. Even if the some-evidence standard was clearly established federal law in the parole context, the standard was correctly applied by the state courts.**

Even if the some-evidence standard was clearly established federal law in the parole context for the purposes of AEDPA, Petitioner's claim would nonetheless fail because the state courts correctly applied the standard to deny habeas relief. The some-evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it is satisfied if there is "any evidence in the record that could support the conclusion made by the [initial decision-maker]." *Hill*, 472 U.S. at 455-57; *see also Sass*, 461 F.3d at 1129 ("*Hill's* some evidence standard is minimal.") Here, there is some evidence to support the Governor's findings that Petitioner's commitment offense was especially heinous, that he had an extensive history of violence and abuse toward the victim, and that he failed to show remorse or appropriate insight into his crime. As each of these factors tends to indicate parole unsuitability under California law, the state courts correctly denied Petitioner's claims. *See* Cal. Code Regs. tit. 15, § 2402. Thus, to the extent that *Hill*'s some-evidence test is clearly established federal law, it was reasonably applied by the state courts, and Petitioner's claim must be denied.

**4. The Governor may rely on static factors to deny parole.**

Petitioner argues that due process precludes the Governor from relying on his commitment offense and past criminal behavior to deny parole. This argument fails for a number of reasons. First, the Governor did not rely solely on static factors—on the contrary, he specifically cited his disbelief of Petitioner's version of events and questioned whether Petitioner showed remorse or insight into the crime. Second, California's parole provisions explicitly state that parole may be denied based on the factors of an inmate's commitment offense. *Dannenberg*, 34 Cal. 4th at 1094; Cal. Penal Code § 3401; Cal. Code Regs. tit. 15, § 2402(c)(1).

Finally, and most importantly, no clearly established federal provides that a state executive cannot base a parole denial on the factors of an inmate's commitment offense or criminal history. Moreover, the Supreme Court has never held that after a certain period of time, a criminal's past behavior is no longer predicative of his future actions. Although the Ninth

Circuit held in *Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003) that continuing reliance on an unchanging factor to deny parole "may result in a due process violation," AEDPA does not permit the use of circuit court dicta to overturn a valid state court decision. *Musladin*, ___ U.S. ___, 127 S. Ct. at 653; *Kane*, 546 U.S. at 10; *Nguyen*, 477 F.3d at 718, 727; *Crater*, 491 F.3d at 1126, n. 8 (9th Cir. 2007), *Foote*, 492 F.3d at 1029-30, *Stenson*, 504 F.3d at 881; *Plumlee*, ___ F.3d ___, 2008 WL 151273 at *6.

The recent case *Hayward v. Marshall*, ___ F.3d ___, 2008 WL 43716 (9th Cir. Jan. 3, 2008) (pet'n. for rehr'g. pending), in which the Ninth Circuit ordered the release of an inmate who had been denied parole by the Governor, also does not constitute clearly established Supreme Court law and may not be used to overturn a valid state court decision under AEDPA standards. Furthermore, the *Hayward* court emphasized that "certain conviction offenses may be so 'heinous, atrocious, or cruel' that a prisoner's due process rights might not be violated if he or she were denied parole solely on the basis of the conviction offense. We need not identify those offenses here. We confine our holding to the facts of this case and the nature of Hayward's particular conviction offense." *Hayward*, ___ F.3d ___, 2008 WL 43716 at *8, n. 10. As such, the decision in *Hayward* has no impact on Petitioner's case.

Because the dicta from *Biggs* and subsequent cases cannot be used to overturn a valid state court decision. Petitioner fails to prove that the state court decisions denying parole were contrary to, or an unreasonable application of, clearly established federal law. The petition must be denied accordingly.

**5. The *Apprendi-Blakely* rule does not apply to Petitioner's case.**

Finally, Petitioner argues that the Governor's decision is invalid under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) because the Governor used factors not specifically found by a jury—in this case, evidence of premeditation—to reverse the parole grant and increase Petitioner's time in custody. In *Apprendi*, the Supreme Court held that "[o]ther than a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In California, the statutory maximum for second degree murder—and the sentence that Petitioner received—is 15

years to life. Cal. Penal Code § 190(a). Because the decision to deny parole increases neither the maximum penalty for second degree murder nor Petitioner's sentence, the *Apprendi* rule does not apply.

Furthermore, in *Blakely v. Washington*, 542 U.S. 296, 308 (2004), the Supreme Court specifically held that the *Apprendi* rule does not invalidate indeterminate sentencing schemes. The Court reasoned that the purpose of the Sixth Amendment is to preserve the power of juries, and that while indeterminate sentencing may increase the power of a judge (or the parole authority) it does not do so at the expense of the jury. *Id.* at 309. The Court went on to explain, "[i]n a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail." *Id.* It follows that in California, where a judge may punish second degree murder with fifteen years to life, every murderer knows he is risking a lifetime in prison. Thus, the decisions in *Apprendi* and *Blakely* have no bearing in Petitioner's case, and Petitioner fails to show that the state court decisions denying relief were contrary to clearly established federal law.

**B. The State Court Decisions Upholding the Governor's Parole Denial Were Based on a Reasonable Interpretation of the Facts.**

The second standard under AEDPA is that a state court habeas decision must be based on a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Petitioner bears the burden of proving that it was objectively unreasonable for the state courts to conclude that the Governor acted in accordance with due process and that some evidence supported the factual basis of the Governor's parole denial. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005). Petitioner fails to meet this burden, as some evidence in the record supports the Governor's finding; furthermore, he does not provide any evidence to show that the Governor's determination of parole suitability violated federal due process. Petitioner may disagree with the Governor's analysis, but that is not sufficient to prove that the state courts' decisions were objectively unreasonable. Thus, because Petitioner fails to show that the state courts' factual determinations were unreasonable under AEDPA standards, the petition must be denied.

**CONCLUSION**

In order for this Court to grant habeas relief, Petitioner must prove that the state court holdings were contrary to, or an unreasonable application of, clearly established federal law—not Ninth Circuit dicta—or that the decisions were based on an unreasonable interpretation of the facts. Petitioner fails to make such a showing. First, he received all the protections provided in *Greenholtz*, the only clearly established federal law regarding the process due at parole consideration hearings. Second, the some-evidence standard does not apply to Petitioner's case; however, even if it did, the Governor's decision is supported by some evidence of parole unsuitability. Third, clearly established federal law does not preclude the Governor from relying on static factors to determine parole suitability. Finally, the *Apprendi-Blakely* rule is inapplicable to Petitioner's case. Accordingly, the petition for writ of habeas corpus should be denied

Dated: February 15, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

AMBER N. WIPFLER
Deputy Attorney General
Attorneys for Respondent

40218901.wpd
SF2007403218

**DECLARATION OF SERVICE BY U.S. MAIL**

Case Name: **Strong v. Curry**

No.: **C07-4927 SI**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On February 15, 2008, I served the attached

ANSWER TO THE ORDER TO SHOW CAUSE;
MEMORANDUM OF POINTS AND AUTHORITIES
(W/EXHIBITS A-I)

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Sylvester Strong
D-99287
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960-0686
*In Pro Se*
*D-99287*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on February 15, 2008, at San Francisco, California.

S. Redd
Declarant

S. Redd
Signature

40219179.wpd