# EXHIBIT B

COURT OF APPEAL
FIFTH APPELLATE DISTRICT
FILED
NOV 15 1989
KEVIN A. SWANSON, Clerk
By _____ Deputy

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SYLVESTER STRONG, SR.,<br><br>    Defendant and Appellant. | No. F011515<br><br>(Super. Ct. No. 380750-0)<br><br>O P I N I O N |

THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County. Mario Olmos, Judge.

Andrew French Loomis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Senior Assistant Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

Strong pled guilty to second degree murder (Pen. Code, § 187)[1/] and assault with a deadly weapon (§245, subd. (a)(1)). He

---

[1/] All statutory references are to the California Penal Code; all rule references are to the California Rules of Court.

*Before Best, Acting P.J., Stone (W.A.), J., and Baxter, J.

admitted having used a deadly weapon in the commission of both crimes (§ 12022, subd. (b)). The plea bargain provided for dismissal of three other counts of assault with a deadly weapon, the prosecutor reserving the right to comment at sentencing. Strong was sentenced to prison for 15 years to life on the murder plus a consecutive three-year middle base term on the assault. On this appeal from the judgment, he contends that the sentencing judge erred in 1) relying on facts pertaining to the dismissed assault counts; 2) finding that the crimes involved separate victims; and 3) ignoring "several statutory circumstances in mitigation."

Sentencing occurred October 21, 1988. The judge had read and considered a probation officer's report (RPO) dated October 12, 1988, together with numerous letters. The instant crimes occurred on December 10, 1987, when Strong broke into the house of his ex-wife, Diana, stabbed her to death, and cut Lavelle Jones, a man who was on the premises. The instant crimes culminated a series of violent crimes by Strong against Diana.

1) He was convicted of battery based on a January 1987 incident in which he slapped her face. 2) He was convicted of corporal injury on his spouse based on a February 1987 incident in which he struck her in the face with his fist numerous times. 3) In July 1987 Diana told police that he had swung a knife at her, inflicting a scratch, and struck her on the lip and shoulder with his fist. 4) In September 1987 she told police that he cut her with a knife, after she tried to defend herself with a knife during a fist fight. 5) Finally, their five-year-old son testified to an

incident in the last half of 1987 in which Strong poured gasoline on Diana. Incidents 3), 4), and 5) formed the basis for the three assault counts dismissed pursuant to plea bargain in the instant case.

In a letter to the court, Strong's counsel argued for concurrent terms. According to counsel, his client hoped to reconcile with Diana. On December 10, his mother and sister told him Diana had been by their house to visit them. Sorry that he had missed her and wanting to discuss reconciliation, he got a ride to her house. When he arrived he saw Jones's truck parked in front. He knew Jones and his reputation "as a man who played around with married women." When he was not admitted upon knocking, he became enraged. He killed Diana and injured Jones because of this rage. Counsel reasoned that "the court should impose a concurrent sentence for the assault on Mr. Jones because this assault occurred due to a situation that is highly unlikely to reoccur. Mr. Jones was not the object of Mr. Strong's anger. Mr. Strong was frustrated, hurt, and angry because of the break up [sic] of his marriage. Dianne [sic] Strong's tragic death terminates the cause of Mr. Strong's anger making it unlikely that there will be a reoccurance [sic] of this type of violence from Mr. Strong."

At sentencing Strong's counsel reprised this argument for concurrent terms. Counsel acknowledged the obvious: his client's violent conduct pattern made him a serious danger to his wife. He denied that this pattern showed any danger to society at large. Counsel reasoned that "all his problems revolved around the breakup of his marriage that I think he will freely admit were due to his abuse of the substance of cocaine."

After listening to lengthy comments from both counsel, the judge denied probation. The judge then analyzed the case as follows:

> "And in reviewing the factors that have been cited for reasons for imposition of the consecutive terms in this case, I think that -- and I might add, those are different and distinct from those that are cited for the imposition of the aggravated term in this case. The criteria for the aggravated term in this report are the -- that the defendant's prior convictions are increasingly serious, he was on probation at the time he committed the offense.
>
> "I think we've already cited the factors in mitigation, that he voluntarily acknowledged wrongdoing, he was having -- had a history of cocaine use; apparently not known to some people, but I think that history is apparent.
>
> "But aside from the -- those factors in aggravation, there are two very distinct and important factors that I think justify the imposition of the consecutive terms in this case, is obviously separate acts of violence and separate victims. I think Mr. Dreiling addressed it in his letter. However, the fact remains that Mr. Jones was injured, sustained injury by attempting to come to the assistance of the victim in this case. And I think Mr. Cooper in his letter outlines what the evidence would have shown at a trial; that is, that the fatal injury, the fatal knife cut to the jugular was inside the residence after the body -- after Mr. Strong took the victim back into the house, and after the contact with Mr. Jones and the injury of Mr. Jones.
>
> "And equally as important is the pattern of violent conduct, which I think does indicate a danger to society. Certainly Mr. Jones found that to be the case. But the dismissed counts indicate prior incidents of violent behavior involving a knife by Mr. Strong against the victim. They all involve a pattern of attempting to seek funds from the victim to support his cocaine habit. Perhaps there was a mixture of other motives, perhaps his desire to reconcile with her, but I think the contention is that on this incident of the killing, that that was done out of a sense of outrage and perhaps passion that Mr. Lavelle Jones was viewed as a possible suitor of the victim, but I don't think it's a -- I think that pattern is consistent with the other incidents."

4.

Harvey Error

In People v. Harvey (1979) 25 Cal.3d 754, our Supreme Court held that "Implicit in such a plea bargain [providing for the dismissal of a count in consideration of a defendant's agreement to plead guilty to other counts], we think, is the understanding (in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count." (Id., at p. 758.) Strong contends that the sentencing judge violated Harvey when he considered the facts underlying the three dismissed assaults. He reasons that "the prosecution's unilateral reservation of a right to comment on the dismissed counts is not sufficient" to show an explicit waiver of the defendant's Harvey rights.

This argument is totally devoid of merit. During the guilty plea proceedings, the prosecutor summarized in detail the plea bargain, including the following: "In return for the defendant's pleas and admissions regarding those two counts [the murder and the assault on Jones], the People are prepared to move to dismiss Counts 3, 4, and 5 of the Information and the enhancement appended to Counts 3 and 4 while reserving the right to comment on those three counts . . . ." The judge then summarized the background of the plea bargain negotiations. Asked for comment, Strong's counsel stated that "the agreement as stated by the Court and counsel is as I understand it." The court then added "I would concur with [the prosecutor's] comments."

The record undermines any claim that the prosecutor's reservation of a right to comment on the dismissed counts was a unilateral statement not binding on the defense. Rather, the right to comment was one of the terms of the plea bargain, as summarized by the prosecutor and as confirmed by defense counsel. We reject Strong's contention that this term, as stated by the prosecutor, was ambiguous. The only reasonable meaning was that the prosecutor could comment on <u>and the sentencing judge could consider</u> the facts underlying the dismissed counts. A right to comment on dismissed counts would be completely worthless unless it included the right to have the comments considered by the sentencing judge. In short, the instant record shows the "contrary agreement" required by People v. Harvey.

"Separate Victims"

Strong contends that, in finding that the crimes involved "separate victims," the judge erroneously invoked rule 425(a)(4), "Any of the crimes involved multiple victims." Respondent concedes that the judge erred. Both the contention and the concession are wrong.

As the quoted passage reveals, the judge found that "aside from the . . . factors in aggravation [cited in the RPO], there are two very distinct and important factors that I think justify the imposition of the consecutive terms . . . ." The judge then cited "obviously separate acts of violence and separate victims," explaining his reasoning. The judge continued, "And equally as important is the pattern of violent conduct, which I think does indicate a danger to society." Thus, the two distinct factors were

6.

1) separate acts of violence and separate victims and 2) pattern of violent conduct.

Contrary to the parties, the judge did not find that either the murder or the assault involved multiple victims. Rather, the judge found that the murder and assault involved separate violent acts committed against separate victims, Diana and Jones. The commission of separate acts of violence supports consecutive terms, without regard to the number of victims (rule 425(a)(2)). The judge could find additional relevance in the fact that these separate acts here were committed against two different persons (rule 408(a), (court may consider "additional criteria reasonably related to the decision being made")).

Mitigating Factors

Finally, Strong argues that the judge failed to consider as mitigating factors supporting concurrent terms 1) that the crimes resulted from a single course of conduct; 2) that they occurred at the same time and place; and 3) that "they were not likely to recur since they arose from the breakup of [Strong's] marriage." In the technical world of determinate sentencing, factors 1) and 2) are not "Circumstances in Mitigation" under rule 423, but instead are "Criteria Affecting Concurrent or Consecutive Sentences" under rule 425(a)(1) and (3). This being the case, the judge's failure to mention them in referring to "factors in mitigation" does not show that he failed to consider these factors or to give them any weight.

Factor 3) invokes rule 423(a)(3), "The crime was committed because of an unusual circumstance, such as great provocation,

7.

which is unlikely to recur." According to Strong, the "unusual circumstance" was the breakup of his marriage. We cannot agree that a defendant's domestic problems mitigate a year-long, <u>course of violent conduct</u>, such as occurred here. Strong's domestic problems and his violence against Diana long predated December 10, 1987. By the time that he finally murdered her, there was nothing unusual about his domestic problems or his resorting to violence. His violent course of conduct against Diana necessarily stopped with her murder. It is outrageous to suggest that Strong derives some mitigating benefit from carrying his violence to the ultimate crime. (<u>Cf</u>. <u>People</u> v. <u>Boerner</u> (1981) 120 Cal.App.3d 506, 510, fn. 4 (contention that victims' illegal alien status mitigated robbery was "outrageous").)

The judgment is affirmed.



RECEIVED
NOV 28 1989
RECORDS OFFICE
FOLSOM STATE PRISON