# EXHIBIT C

**FILED CONFIDENTIAL**
OCT 25 1988
FRESNO COUNTY CLERK
By_____ DEPUTY

SYLVESTER STRONG

---

SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff | ACTION NUMBER 380750-0 |
| vs. | REPORT AND RECOMMENDATION OF THE PROBATION OFFICER |
| SYLVESTER STRONG    Defendant | Probation No. 173170<br>CII A06162328    FBI 150972T10<br>///SO 125490    DA 87S0589<br>Race: Black |

TO THE HONORABLE JUDGE OF THE ABOVE ENTITLED COURT:

Pursuant to the statutes and at the direction of the court, your probation officer hereby respectfully submits the following report and recommendation as to the above named defendant, after ( ) conviction in court trial ( ) verdict in jury trial (X) plea: No Contest

| | |
|---|---|
| | Charge(s) Count 1: PC 187 w/ PC 120022(b) Enchancement, Murder in the 2nd Degree with Personal Use of a Knife; Count 2: PC 245(a)(1) w/ PC 12022(b) Assault w/a Deadly Weapon with Personal Use of a Knife. |
| 2962 South Fig, Fresno, CA<br>Address | |
| 34 (2-15-54) / 475 days (317/158)<br>Age            Time in Custody | December 10, 1987<br>Date of Offense |
| Public Defender<br>Attorney | December 10, 1987<br>Date of Arrest |
| October 21, 1988    8:30 AM<br>Date of Sentencing    Time | Mario G. Olmos            Six<br>Judge                Dept. |

BRIEF SUMMARY OF FACTS:

Count One: On December 10, 1987 the defendant stabbed Dianna Strong in the neck with a knife, and as a result of the stabbing, the victim died.

Count Two: On December 10, 1987 the defendant assaulted Lavelle Jones with a knife, and as a result of this assault the victim suffered a laceration wound on his left middle finger.

## OPENING STATEMENT

On September 12, 1988 in Superior Court No. 380750-0, the defendant entered a no-contest plea to felony violation of Section 187 of the Penal Code, Murder in the Second Degree. The defendant admitted the Penal Code Section 12022(b) Enchancement, attached to this Count. The defendant further entered a no-contest plea to felony violation of Section 245(a)(1) of the Penal Code, Assault with a Deadly Weapon, and the defendant admitted the Penal Code Section 12022(b) Enhancement, attached to this Count. Information obtained from a transcript of the Change of Plea Hearing, dated September 12, 1988, indicates the plea agreement was conditioned on <u>dismissal of the following</u>: Count Three, alleging felony violation of Penal Code Section <u>245(a)(1)</u> with a Penal Code Section 12022(b), Enhancement; Count Four, <u>alleging</u> felony violation of Penal Code Section <u>245(a)(1)</u> with a Penal Code Section 12022(b), Enhancement; Count Five, alleging <u>felony</u> violation of Penal Code Section 245(a)(1). The right to comment was reserved on these dismissed Counts and Fresno Municipal Court Action Numbers M002984-3 and M003363-1. The Court imposed the following conditions on the plea: The defendant would serve no more than the mid term sentence on Count Two, and the Penal Code Section 12022(b), Enhancements attached to Count One and Count Two would be stayed.

The matter was referred to the Fresno County Probation Department for preparation of a presentence report and recommendation, and sentencing was calendared for October 21, 1988 at 8:30 AM in Department Six of the Fresno County Superior Court.

## CIRCUMSTANCES OF THE OFFENSE

The following information was obtained from a transcript of the preliminary hearing in Fresno Municipal Court No. F012661-5, dated: March 18, 1988, Fresno Police Department Reports, Case Numbers 87-43558, 87-59641, 87-82888, and Fresno County Coroner's Postmortem Record, Case No. A87-769:

In reference to Count One and Two: On December 10, 1987 at 7:14 PM, Fresno Police Officers were dispatched to 2564 South Barton, Fresno, regarding a caller who had just stabbed his wife. The caller was later identified as Sylvester Strong, the defendant. The stabbed victim was later identified as Dianna Strong.

Lavelle Jones testified he had done gardening for the victim, Dianna Strong, starting in September, 1987. He said he was acquainted with Dianna's husband, Sylvester Strong (the defendant). Mr. Jones said on the night when Dianna was killed, he had gone to her house about 6:40 PM to talk to her about his moving her furniture. While he was there, Dianna talked on the telephone on three occasions. During the last telephone conversation he heard Dianna say,"I don't have no money right now". Mr. Jones said after this call Dianna told him it was Sylvester, and she acted a little bit nervous. He said Dianna then told him she owed Sylvester some money, and he wanted the money out of the house.

Mr. Jones testified about five to ten minutes later there was a knock at the door. He said Dianna looked out, and she said, "Sylvester". Witness Jones said Sylvester became upset, kept knocking, and the defendant told Dianna to open the door. Mr. Jones said Dianna told him she wasn't going to open the door because she had a restraining order and Sylvester wasn't supposed to be on the premises.

Mr. Jones reported he was standing in the kitchen with Dianna when the defendant broke open the front door. He said the defendant stumbled in a bit, stood up, and he saw the defendant had a knife in his right hand. Jones said the defendant was real upset, and he was sweating and perspiring quite a bit. Mr. Jones stated the defendant accused him of going with his wife and then the defendant started calling Dianna names. He said the defendant told Dianna, "Bitch, I am going to kill you".

Mr. Jones testified Dianna took off running, but the defendant grabbed her with his left hand. The witness said the defendant started hitting Dianna with his right hand and that the defendant had the knife in his hand. He said he heard Dianna screaming, "Sylvester, don't hurt me". He indicated he started to leave, and he stood at the front door and said, "Sylvester, don't you all hurt each other". Jones said Dianna then ran down the hall and ran into him trying to get out of the front door. He said he noticed she was losing her balance, and she fell to her knees on the concrete by the door entry. Mr. Jones stated he looked around, and saw the defendant had the knife and he was coming towards him. Jones said the defendant then cut him on his hand. He said the defendant said he was going to kill him (Mr. Jones) too, and then Mr. Jones ran out of the door.

Witness Jones said he backed up, and as he was backing up he observed the defendant reach down towards Dianna. He said he kept backing up, and he got in his truck and left. Mr. Jones said he did not know he had been cut until he was driving down Cedar Avenue.

Ron Shamp testified that he is a Police Officer with the Fresno Police Department. He said on December 10, 1987 at approximately 7:30 PM he was dispatched to 2564 South Barton, Fresno, regarding a husband who stabbed the wife. Upon arrival at this location, Officer Shamp contacted a man, and in Court he identified this man as the defendant. As they were walking back towards the house, the defendant told Officer Shamp he was the person who had the knife. The defendant yelled at Officer Shamp to hurry; that she was in the house. Upon entering the house, the officer observed the victim on the floor on her back with a butcher knife next to her left hand. Officer Shamp said he and Officer Manfredi placed the defendant under arrest. He then transported the defendant to Police Headquarters. Officer Shamp stated while en route to the Police Headquarters, the defendant made a spontaneous statement that he should have come out of the house with the knife so the officers would shoot him. Officer Shamp said approximately 45 minutes to an

-3-

hour later, he transported the defendant to Valley Medical Center for a blood sample to be taken. The toxicology report on the defendant's blood sample was negative to ethyl alcohol but positive to cocaine metabolite, 0.250 milligrams per liter.

Michael Manfredi testified he is a Police Officer with the Fresno Police Department. He stated on December 10, 1987 at approximately 7:30 PM he was dispatched to 2564 South Barton, Fresno. Officer Manfredi said he contacted the defendant who appeared highly excited, and he was sweating profusely. Officer Manfredi said he then asked the defendant if he had been using any drugs that day, and the defendant said he had not; that he had just run to the house. The officer testified there was a Black female laying face up in the entryway, but there were no other persons present in the house.

Officer Manfredi said he observed a large smear of blood on the entry porch, a deep pool of blood on the threshold, and blood on the screen door. The front door had a dead bolt which was extended in the locked position. The doorknob was imbedded in the entry wall. The wood frame had been broken and splintered apart at the point where the dead bolt locked into the wall. The brass plate was located ten feet back in the hallway.

Officer Manfredi said in the kitchen area, there was an artificial fingernail in the sink, the phone was off the hook, and it was stained with blood. He said there was blood smeared on top of the highchair. On top of the refrigerator there was a butcher block knife holder with a knife missing. Officer Manfredi said in the living room area there was a large blood stain in the carpeting, blood drippings on the desk, blood on the leaves of an artificial plant, and blood on the wall.

Officer Manfredi testified the victim was laying on her back with her hands at her sides. She had a stab wound in the upper right breast area under the collar bone. She was bleeding, and her eyes were blank and glassy. Officer Manfredi said she was not making any noise, and there was no sign of movement. Also, in the entry way, officers located a kitchen knife with a six or seven inch blade. This knife was the same brand as the ones found in the kitchen. It was laying next to the victim at the end of her left hand.

The Fresno County Coroner's Postmortem Record indicates victim Dianna Strong suffered a stab wound from the back and through to the palm of her left hand. The victim's left thumb had a 1/4 inch deep incised wound. A stab wound was located one inch to the right mid line of the neck. This stab wound extended through the right internal jugular vein, and cut the Azygous vein. The direction of the wound is from front to rear with a 30 degree downward angle. The stab wound was estimated to be two-and-a-half inches. The victim, Dianna Strong, was pronounced dead at Valley Medical Center emergency room at 7:48 PM on December 10, 1987 by Doctor Michael Solomon. The cause of death is recorded as a Hemorrhagic Shock due to Stab Wound to Neck and Chest.

In reference to Count Three (dismissed): Manuel Orozco testified he is a Police Officer with the Fresno Police Department. He stated on July 2, 1987,

he was dispatched to 2564 South Barton, Fresno. Officer Orozco said he contacted Dianna Strong, who reported she and her husband had been in a argument over his drug habit. Mrs. Strong told Officer Orozco her husband wanted some money, and when she refused to give him the money, he threw an unopened knife at her. She reported her husband then picked up the knife, swung it at her, and caused a six-inch scratch on her right thigh. Mrs. Strong reported her husband then punched her to the left of her lip, and struck her on her right shoulder with his fist. She stated her husband had taken a derringer from the house. The victim identified her husband as Sylvester Strong (the defendant).

In reference to Count Four (dismissed): Luther Reagan testified that he is a Police Officer with the Fresno Police Department. He stated on September 8, 1987, he was dispatched to 2564 South Barton, Fresno. Officer Reagan contacted Dianna Strong, and observed she had a minor cut on her left thumb, and a minor cut on her abdomen. She appeared agitated, frightened, and explained that she had gotten into a fist fight with her husband. In the process, she had picked up a knife to defend herself, but she was cut with a knife by her husband. She identified her husband as Sylvester Strong (the defendant). Mrs. Strong wanted the problem solved, but she did not want any official action as far as reports.

In reference to Count Five (dismissed): Sylvester Strong, Jr. testified he is five years old, and in kindergarten. He said on one occasion his dad (the defendant) put gasoline on his mom. He said one time his dad got his mom with a knife on the ankle. Witness Strong said one time his dad hit his mom on her face, and she was bleeding by the corner of the eye.

## DEFENDANT'S STATEMENT

The defendant was interviewed by your officer at the Fresno County Jail on October 4, 1988. At the time of this interview, the defendant made the following verbal statement: "I pled guilty to Second Degree Murder, and on the Assault pled no-contest. If I wouldn't have been under so much pressure and I would have been thinking clearly, it would never have happened. I really feel real sorry I did it because as far as my wife, she was a good person, and as far as Mr. Jones, I feel bad about cutting him. If I would have been in my right mind, none of this would have happened. My son won't be able to grow up to see his mother, and I really feel bad about that. I hated to come to this point to see what drugs was doing to my life and my family".

At the time of the preparation of this report, your officer has not received a written statement from the defendant. If a written statement is received prior to sentencing, it will be submitted for the Court's consideration.

-5-

VICTIM STATEMENT AND ASSESSMENT:

This matter has been referred to the Victim Services Unit and an Impact Statement requested. None has been received to date. If a statement is received prior to the date of sentencing, it will be submitted for the Court's consideration.

STATEMENT OF THE DISTRICT ATTORNEY

A statement of views has been received from the Fresno County District Attorney's Office. It has been read and considered and is attached to this report for the Court's consideration.

DEFENSE STATEMENT

As of the date of dictation, no statement has been received at the Probation Office. Should one be received prior to sentencing, it will be attached to the report for the Court's consideration.

RESTITUTION

Restitution appears to be an issue in this matter.

PRIOR JUVENILE RECORD

The defendant stated he went to Juvenile Hall on one occasion in Fresno for attempting to steal cars with friends. He stated he was never placed on probation.

PRIOR CRIMINAL RECORD

The following is the defendant's prior criminal record as provided by the California Identification and Investigation Bureau, Fresno County District Attorney, and Fresno Municipal Court Records:

| DATE | ARRESTING AGENCY | CHARGE | DISPOSITION |
|---|---|---|---|
| 1-26-87 | Fresno PD | PC 242, Battery | 9-10-87: Fresno MC #M002984-3; PG-PC 242; 18 mos Cond Sent; 30 ds jl, ss, except 3 ds; $100 FN. |

The circumstances of this offense were on January 26, 1987 the defendant slapped Dianna Strong on the left side of her face. The officer noted the

victim's left eye was slightly red and watery. The defendant denied hitting his wife and stated, "The next time you come out it will be for something".

| | | | |
|---|---|---|---|
| 2-12-87 | Fresno PD | PC 273.5, Inflict. Corporal Injury on Spouse | 2-26-88: Fresno MC #M003362-1; PG;PC 273.5; 2 yrs Cond. Sent; 60 ds jl; $250 FN, ss. |

The circumstances on this offense were on February 12, 1987 the defendant struck his wife, Dianna Strong, in the face with his fist numerous times. Officers noted the victim's face was completely swollen and puffy, she was cut and bleeding below her left eye.

## PROBATION HISTORY

Three months prior to the instant offense on September 10, 1987 in Fresno Municipal Court No. M02984-3 the defendant was placed on 18 months Conditional Sentence (probation) regarding a battery committed on victim Dianna Strong. The defendant was therefore on probation at the time of the commission of the instant offense, and his performance on probation is considered completely unsatisfactory.

Subsequent to the current offense the defendant was placed on two years conditional sentence (probation) on February 26, 1988 in Fresno Municipal Court No. M003362-1 regarding an assault on victim Dianna Strong which occurred on February 12, 1987. The defendant is therefore currently on probation (Conditional Sentence) is two Municipal Court matters regarding previous assaults on victim Dianna Strong.

## SOCIAL HISTORY

The following information was obtained during an interview with the defendant at the Fresno County Jail on October 4, 1988:

## FAMILY HISTORY

The defendant stated his true name is Sylvester Strong. He is 34 years of age. The defendant was born on February 15, 1954 in Fresno, California. The defendant reported that he was raised by his mother, and that his parents were never married. The defendant said that he was never told the name of this father, but he believes his father was a man named Pre Hacket. Defendant Strong indicated Mr. Hacket had been employed in explosives. He said Mr. Hacket died in the early 1970's. Defendant Strong reported his mother, Dorothy Potts, is employed as an In Home Care Worker.

The defendant reported he has six brothers, and one sister. He reported his brother, Randy Herbert, is presently in Jamestown (prison). The defendant

-7-

thinks his brother is in Jamestown for a Burglary. The defendant said one of his brothers resides in Hayward, California, and the rest of his siblings live in the Fresno area.

Defendant Strong reported that he graduated from Washington Union High School in 1972. He indicated that he never participated in any job training program. The defendant stated that he was never in the military service. He reported that he has participated in recreation programs for children at the North Avenue Community Center. In addition, the defendant said he worked part time as an instructor in basketball and track at the North Avenue Community Center. The defendant said his hobby is showing dogs. Defendant Strong said that his religious preference is Christian.

The defendant said prior to his arrest, he was residing with his mother at 2962 South Fig, Fresno, California. He stated he had resided at this location for two months. Defendant Strong said he previously resided at 2564 South Barton, Fresno from February 1979 through October 1987.

MARITAL HISTORY

The defendant stated that he is single. He reported one prior marriage to Dianna Strong, nee Pinson (the victim). The defendant said they were married on June 6, 1980 in Las Vegas, Nevada. The defendant said they began experiencing marital problems in 1986. He stated they separated several times, but they tried to work things out. Defendant Strong said they were last separated in October 1987, and legally divorced on November 19, 1987.

The defendant reported that he has one son, Sylvester Strong, II, age six years. The defendant said his son is living with his maternal grandmother, Ruby Pinson, at 2564 South Barton, Fresno.

EMPLOYMENT HISTORY

The defendant reported that on the day of this incident, he had started working for the Department of Social Services as an In Home Care Aide. Defendant Stong stated that he had previously worked in Animal Control for the Society for the Prevention of Cruelty to Animals for seven years. He stated he left this job because he could not function due to the stress of his marriage dissolving.

FINANCIAL STATUS AND REPORT FEES

Attached hereto and to be considered a part of this report unless waived is the form containing a recommendation in regard to Presentence Investigation Report fees, pursuant to Section 1203.1b of the Penal Code.

The defendant reported that on the day of this incident, he had begun employment as an In Home Care Aide, and he was to earn $3.75 per hour. Defendant Strong reported that he did not have any assets. However, he noted that he was supposed to receive $3000.00 from a property settlement with his spouse, but he has never received it. The defendant said that he has been trying to find out why he has not received this settlement. Defendant Strong said that he owes $8000.00 to $9,000.00 to finance companies.

USE OF ALCOHOL/CONTROLLED SUBSTANCES

The defendant stated that he did not use alcohol before he came to the jail. Defendant Strong acknowledged that he was an abuser of cocaine. He stated "that stuff took me over". The defendant said he first used cocaine in 1985. The defendant said he last used cocaine on December 10, 1987. Defendant Strong said he used about a gram of cocaine each month. He said he used cocaine whenever he had money; maybe twice a week. The defendant said he was using cocaine at this rate for maybe three or four years. The defendant was asked if his cocaine use was ever a problem for him, and he said when he was using cocaine he would do things he would not normally do. The defendant said that he was addicted, but that he has finally kicked the habit since he has been incarcerated. The defendant said that his use of cocaine was 99% of his downfall.

The defendant said that he received treatment for drug abuse in the ARC at Community Hospital in Clovis in 1986. He said that he was in this program for four days, but he left. The defendant said that he returned for three days, but he did not complete the program. Defendant Strong stated that he was not ready for the drug treatment program.

PSYCHOLOGICAL OR MEDICAL HISTORY

The defendant stated that since he has been in the jail, he has developed high blood pressure. He said that he is presently taking medication for high blood pressure. Defendant Strong said that otherwise his health is pretty good. When asked about his mental health, the defendant responded that he is "coming back to stable". The defendant said that he has never received treatment for mental health. Defendant Strong said that there is no history of mental illness in his family.

STATEMENT OF REFERENCES AND INTERESTED PARTIES

As of the date of this dictation, no character references have been received on behalf of the defendant. If any are received prior to the date of sentencing, they will be submitted for the Court's consideration.

CUSTODY

The defendant was in custody from December 10, 1987 through the date of sentencing on October 21, 1988. Therefore, the defendant is entitled to received total time credits of 475 days (317 actual; 158 good time/work time).

DISCUSSION AND EVALUATION

FACTORS AFFECTING PROBATION

Regarding Rule 414a, the defendant is statutorily prohibited from a grant of probation pursuant to provisions of Penal Code Section 1203(e)(2), except in unusual cases. After considering the criteria affecting probation in unusual cases pursuant to Rule 416, your officer finds that the defendant's case does not come within the enumerated criteria.

Regarding Rule 414b, it does appear likely the defendant will be a danger to others if not imprisoned based on the circumstances of the current offense, and the defendant's prior criminal record.

(The recommended application of the following factors and circumstances is set forth in the Conclusion section of this report.)

CIRCUMSTANCES IN MITIGATION

Your officer finds no circumstances in mitigation within the meaning of Rule 423a, facts relating to the crime.

Under Rule 423b, facts relating to the defendant, the following facts appear to apply: In light of the defendant's statements regarding his history of cocaine use, it appears the defendant was suffering from a mental or physical condition that significantly reduced his culpability for the crime (Subsection 2). The defendant voluntarily acknowledged wrongdoing at an early stage of the criminal process, however, your officer notes that Counts 3, 4, and 5 were dismissed at the time of the plea agreement (Subsection 3).

CIRCUMSTANCES IN AGGRAVATION

Under Rule 421a, facts relating to the crime, the following facts are applicable: The defendant forced entry into the victim's residence, his being armed with a deadly weapon immediately after his entrance, and his continuing his assaultive conduct after attempts of victim Lavelle Jones to dissuade him, indicate planning and premeditation (Subsection 8). Your officer notes that Counts 3, 4, and 5 were dismissed at the time of the plea agreement with the right to comment reserved.

Under Rule 421b, facts relating to the defendant, the following facts are applicable: The defendant has engaged in a pattern of violent conduct which indicates a serious danger to society (Subsection 1). The defendant's prior convictions as an adult are of increasing seriousness (Subsection 2). The defendant was on probation when he committed the crime (Subsection 4). The defendant's prior performance on probation was unsatisfactory (Subsection 5).

ENHANCEMENTS

Under Count One, Penal Code Section 187, the defendant admitted the Penal Code Section 12022(b) enhancement, Personal Use of a Deadly Weapon, a knife. This enhancement adds a one year term in addition and consecutive to the sentence provided for Count One.

Under Count Two, Penal Code Section 245(a)(1), the defendant admitted the Penal Code Section 12022(b) enhancement, Personal Use of a Deadly Weapon, a knife. This enhancement adds a one year term in addition and consecutive to the sentence provided for Count Two, however, pursuant to Penal Code Section 654, your officer will recommend imposition of this enhancement be stayed.

CONCURRENT/CONSECUTIVE SENTENCE

In considering the criteria affecting the concurrent or consecutive sentence, your officer has given great weight to the following criteria affecting the decision to impose consecutive rather than concurrent sentences: Under Rule 425a, facts relating to the crimes, the following fact applies: The crimes involve separate acts of violence on separate victims (Subsection 2).

Under Rule 425(b) the following circumstances in aggravation were applied: The defendant's action demonstrated planning and premeditation (Rule 421a,8). Counts 3, 4, and 5 were dismissed at the time of the plea agreement (Rule 421a). The defendant has engaged in a pattern of violent conduct which indicates a serious danger to society (Rule 421b,1).

CONCLUSION

Defendant Sylvester Strong is appearing in Superior Court for sentencing following his plea to Second Degree Murder and Assault with a Deadly Weapon. Although this is the defendant's first felony conviction, he is statutorily prohibited from a grant of probation pursuant to provisions of Penal Code Section 1203(e)(2).

The facts of the present case indicate on December 10, 1987 the defendant forcibly entered victim Dianna Strong's residence, and assaulted Dianna Strong and Lavelle Jones with a knife. Victim Dianna Strong was stabbed twice, and her wound proved to be fatal. Victim Lavelle Jones suffered a laceration wound on his finger.

The facts of the dismissed Count Three indicate that on July 2, 1987 the defendant while personally armed with a knife, assaulted victim Dianna Strong. The victim suffered a six inch laceration wound on her right thigh, and she was punched in her face and shoulder.

The facts of the dismissed Count Four reveal that on September 8, 1987 the defendant and victim, Dianna Strong, became involved in an altercation, and victim Dianna Strong suffered laceration wounds from a knife on her thumb and abdomen.

The facts of the dismissed Count Five reveal that between July, 1987 through December 10, 1987 the defendant assaulted the victim, Dianna Strong, on one occasion by pouring gasoline on her.

Your officer is recommending the defendant be committed to State Prison for the protection of society, and to punish the defendant under Rule 410. After considering the circumstances in mitigation and aggravation, your officer finds the circumstances in aggravation outweigh the circumstances in mitigation. Your officer takes note of the following factors in recommending imposition of the aggravated term sentence in Count Two: The defendant's prior convictions as an adult are of increasing seriousness (Rule 421b,2); the defendant was on probation when he committed the crime (Rule 421b,4); the defendant's prior performance on probation was unsatisfactory (Rule 421b,5). Thus, your officer feels the aggravated term sentence is justified in Count Two.

Your officer is recommending that the sentences for these crimes be served consecutively. Your officer has given greater weight to the following criteria in recommending imposition of consecutive sentences: The defendant's actions involved separate acts of violence on separate victims; Counts 3, 4, and 5 were dismissed at the time of the plea agreement (Rule 421a); and the defendant has engaged in a pattern of violent conduct which indicates a serious danger to society (Rule 421b).

Your officer will recommend the Penal Code Section 12022(b) enhancement which mandates a consecutive one-year term be attached to Count One. Your officer will further recommend the Penal Code Section 12022(b) enhancement on Count Two be stayed pursuant to provisions of Penal Code Section 654. Thus, your officer is recommending the defendant be committed to State Prison for a total term of 20 years to life.

RECOMMENDED PRISON TERM

| CRIME | MIT/MID/AGG | BASE TERM | ENHANCEMENTS | CONSEC/CONCURR |
|---|---|---|---|---|
| Ct.2 PC 245(a)(1) | 2  3  4 | 4 yrs | Yes PC 12022(b), stayed 654 | N/A  N/A |

-12-

```
Ct.1                    15 yrs       Yes/PC 12022(b),   Yes/   N/A
PC 187                  to Life      1 yr               15 yrs
                                                        to Life
```

Total years:  Twenty years to Life

## RECOMMENDATION

It is recommended that the defendant, Sylvester Strong, be committed to the California Department of Corrections for the agravated term of four years in Count Two.

It is further recommended that in Count Two the Penal Code Section 12022(b) enhancement be stayed pursuant to Penal Code Section 654.

It is further recommended that the defendant be committed to the California Department of Corrections for the consecutive term of 15 years to life in Count One.

It is further recommended that the defendant receive a consecutive one year term for the Penal Code Section 12022(b) enhancement in Count One.

It is further recommended that the defendant receive total time credits of 475 days (317 actual; 158 good time/work time).

In compliance with Government Code Section 13967, it is respectfully recommended that a restitution fine of $150.00 be imposed.

Respectfully submitted,

ROGER PALOMINO, INTERIM
          CHIEF PROBATION OFFICER

By: *Al Edwards*
    Al Edwards, Deputy

Dated:  October 12, 1988

Read and Approved:

*[signature]*
Supervising Probation Officer
kmh

-13-

***************

The foregoing report has been read and considered.

Dated: 10/21/88

_____Mario_____
JUDGE OF THE SUPERIOR COURT

COURT FINDING

| CRIME | MIT/MID/AGG | BASE TERM | ENHANCEMENTS | CONSEC/CONCURR |
|---|---|---|---|---|
| Ct.1, PC 187 | — | 15yrs/life | 12022(b) stayed | cons |
| Ct.2, PC 245(a)(1) | Mid | 3yrs | 12022(b) stay | — |

TOTAL YEARS: 18yrs to life

-14-