# EXHIBIT F



# OFFICE OF THE GOVERNOR

October 27, 2006

*Via Facsimile and U.S. Mail*

Mr. Sylvester Strong, D-99287
*Correctional Training Facility*
Central Facility – ED40L
Post Office Box 686
Soledad, California 93960

Dear Mr. Strong:

Penal Code section 3041.2 authorizes the Governor to review parole decisions of the Board of Parole Hearings (Board) concerning persons sentenced to an indeterminate term upon conviction of murder.

After considering the same factors considered by the Board, the Governor has invoked his authority to reverse the Board's decision to grant parole in your case. The Governor's statement of the reasons for his decision is attached.

A copy of this letter is being provided to you via facsimile, and the signed original (along with a statement of the reasons for his decision) is being sent by mail. Additionally, we are transmitting a copy of this letter and the attached decision to the Chairperson of the Board of Parole Hearings.

Sincerely,

ANDREA LYNN HOCH
Legal Affairs Secretary

Attachment

cc: Board of Parole Hearings (w/attachment)

# INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
(Penal Code Section 3041.2)

**SYLVESTER STRONG, D-99287**
**SECOND-DEGREE MURDER**

AFFIRM:            _____

MODIFY:            _____

REVERSE:              __X_____

On December 10, 1987, Sylvester Strong stabbed to death his wife Diana Strong and also cut and wounded Lavelle Jones.

Prior to the offense, Diana Strong obtained a divorce and a restraining order against Sylvester Strong. According to the testimony of Lavelle Jones, set forth in the probation report, Lavelle went to Diana's house on the evening of the offense. While he was there, Diana had a telephone conversation during which she told the caller, "I don't have no money right now." When the call ended, Diana acted nervous and told Lavelle that Sylvester was the caller. Sylvester came to her house soon after, and told Diana to open the door. Diana told him she would not open the door because she had a restraining order and he was not supposed to be on the premises. Sylvester then broke open the door and stumbled inside. Lavelle testified that Sylvester was holding a knife. Sylvester accused Lavelle of going with Diana, and he started calling Diana names and said, "Bitch, I am going to kill you." Diana tried to run but Sylvester grabbed her and started hitting her. He was still holding the knife. Diana screamed, "Sylvester, don't hurt me." Lavelle began to leave and said, "Sylvester, don't you all hurt each other." Diana ran into Lavelle as she tried to leave through the front door. She lost her balance and fell to her knees by the entryway. Sylvester approached Lavelle, cut his hand with the knife and said he was going to kill him too. Lavelle ran out of the house. While walking toward his truck he observed Sylvester reach down towards Diana. Lavelle then entered his truck and drove away.

According to a Fresno police officer's testimony, set forth in the probation report, he was dispatched to Diana's residence and observed Sylvester in the front of the house. Sylvester told him that he was the person with the knife and told him to hurry because she was in the house. According to another officer's testimony, set forth in the probation report, he was also dispatched to Diana's residence and observed large amounts of blood in various locations throughout the home. The second officer also observed that the wooden door frame of the front door was broken and had splintered apart. In the kitchen, he saw a butcher block knife holder with a knife missing and an artificial fingernail in the sink. The second officer saw Diana lying on her back near the entryway. She had a stab wound in the upper right breast area under the collar bone. She was bleeding, and her eyes were blank and glassy. She was not moving or making any noise. A kitchen knife was near her hand. It had a six or seven inch blade and was the same brand as those found in the kitchen. According to the probation report, the Fresno County

Sylvester Strong, D-99287
Second-Degree Murder
Page 2

Coroner's Postmortem record indicated that Diana also suffered a stab wound through the palm of her left hand and another in her thumb. She was also stabbed in the middle of her neck, and the two and a half inch wound extended through the right internal jugular vein and cut the Azygous vein. Diana was taken to a hospital emergency room where she was pronounced dead. She died from hemorrhagic shock due to stab wounds to the neck and chest.

Sylvester was arrested at the scene. He was charged with murder and four counts of assault with a deadly weapon. One assault charge pertained to Sylvester cutting Lavelle. The other three assault charges related to prior instances in which Sylvester assaulted Diana, twice with a knife and once by pouring gasoline on her. Pursuant to a plea agreement, Sylvester pled no contest to second-degree murder and to one count of assault with a deadly weapon for assaulting Lavelle. In exchange for his no contest plea, the remaining counts were dismissed. He was sentenced to 15 years to life in prison for murder, plus a consecutive three-year term for assault with a deadly weapon. The judgment was affirmed on appeal.

Sylvester was 33 years old when he perpetrated the life offense. He told the 2006 Board that around age 15 he was sent to juvenile hall for attempting to steal cars with his friends. His adult criminal history consists primarily of crimes of violence against Diana. In addition to the aforementioned assault charges, Sylvester was convicted of battery for slapping Diana in the face. He was also convicted of inflicting corporal injury on a spouse for striking Diana in the face numerous times with his fist. According to the probation report, officers responding to Diana's residence during the latter incident noted that her face was completely swollen shut and puffy, and she was cut and bleeding below her left eye. At the time of the life offense, Sylvester was on probation for both convictions and a restraining order was in effect which, as Sylvester told the 2006 Board, prohibited him from being on her property. The 2006 Board asked Sylvester how many times he laid his hands on Diana before he killed her. Sylvester replied, "[w]hatever the record said. It was at least three or four different incidents that I had spousal abuse on Diana Strong." In addition, Sylvester told the probation officer that he had abused cocaine for several years, and he told the 2006 panel that he smoked some rock cocaine an hour or two before committing the life offense. According to his 2004 Life Prisoner evaluator, "Sylvester feels that the use of cocaine was 99% the cause of his downfall."

During his incarceration for the life offense, Sylvester Strong was disciplined two times for threatening staff and for disruptive behavior. He was also counseled six times for less serious misconduct, most recently for being loud and disrespectful to staff in 1999. While Mr. Strong received no disciplinary violations for substance use, he admitted to the 2006 Board that he smoked some marijuana in 1992 or 1993.

I have considered various positive factors in reviewing whether Mr. Strong is suitable for parole at this time. In addition to remaining discipline-free for more than 13 years, Mr. Strong made efforts in prison to enhance his ability to function within the law upon release. He completed vocational training in upholstery and received additional training in masonry. He held institutional positions in prison industry as a porter, a furniture upholsterer, an industry worker, a painter and a sewing machine operator, among other things. He participated in self-help and

Sylvester Strong, D-99287
Second-Degree Murder
Page 3

therapy, including Narcotics Anonymous, Alcoholics Anonymous, Anger Management, Peer Education Program and the Impact Program, a 13-week course which focused on a variety of issues, including domestic violence. He also completed several parenting, employability and re-entry classes. He maintains seemingly supportive relationships with family and friends and he received some positive evaluations from mental-health and correctional professionals over the years. His plans upon parole include living with his mother in Fresno County, his county of last residence, and working as a clerk in a cigarette store.

Despite the positive factors I have considered, the second-degree murder for which Sylvester Strong was convicted was especially grave, in part because the manner in which he killed Diana Strong — breaking into her home, threatening to kill her and then stabbing her multiple times with a kitchen knife — demonstrated an exceptionally callous disregard for her suffering and life. In addition, there is evidence in the record before me that Sylvester engaged in some level of premeditation. Lavelle Jones testified that when Sylvester entered the house he said, "Bitch, I am going to kill you." Lavelle also testified that when Sylvester cut him with the knife he told him that he was going to kill him too. According to the probation report, when Sylvester was arrested on a prior occasion for abusing Diana, he told responding officers that "[t]he next time you come out it will be for something." Indeed, the Court of Appeal opinion noted that there was "a year-long, course of violent conduct" (original emphasis) in this case. The Court of Appeal opinion also noted that "Strong's domestic problems and his violence against Diana long predated December 10, 1987. By the time that he finally murdered her, there was nothing unusual about his domestic problems or his resorting to violence. His violent course of conduct against Diana necessarily stopped with her murder." Sylvester had numerous opportunities to cease during this crime — after breaking through the front door, after hitting and threatening to kill Diana, after stabbing Lavelle and after he began stabbing Diana — yet he chose to continue, and in doing so he covered her house in her blood. One of the police officers testified that upon arriving at the scene of the murder he observed smears, pools, stains, and drippings of blood on the front porch, the screen door, the walls, the carpet, a highchair in the kitchen, a telephone, a desk, and on the leaves of a plant in the living room. The gravity of this shocking crime is alone sufficient for me to conclude presently that Sylvester Strong's release from prison would pose an unreasonable public-safety risk. The Fresno County District Attorney's Office expressed to the 2006 Board its opposition to Mr. Strong's parole, based in part on the gravity of the murder he committed.

Mr. Strong says he accepts responsibility for the murder and is remorseful for his actions. Nevertheless, and despite acknowledging to the 2006 Board that he had been violent toward Ms. Strong in the past, that he came to her house in violation of a restraining order, and that he killed her and only wounded Mr. Jones, Mr. Strong told the panel, "I got the knife to do some damage to Mr. Jones." When the 2006 Board asked him if he meant to use the knife on Mr. Jones or if he truly meant to murder his wife, Mr. Strong replied, "Mr. Jones was the culprit. The person I was after was Mr. Jones." "But," the panel responded, "you seemed to miss Mr. Jones and brutally murdered your wife." Based on the record before me, I do not accept Mr. Strong's version of events.

Sylvester Strong, D-99287
Second-Degree Murder
Page 4

At age 52 now, after being incarcerated for more than 18 years, Mr. Strong made some creditable gains in prison. But given the current record before me, and after carefully considering the very same factors the Board must consider, I find that the negative factors weighing against Mr. Strong's parole suitability presently outweigh the positive ones tending to support it. Accordingly, because I believe his release would pose an unreasonable risk of danger to society at this time, I REVERSE the Board's 2006 decision to grant parole to Mr. Strong.

Decision Date: 10-26-2006

ARNOLD SCHWARZENEGGER
Governor, State of California