# EXHIBIT H

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

# Fifth Appellate District

COURT OF APPEAL
FIFTH APPELLATE DISTRICT
F I L E D

MAY 2 4 2007

LEISA V. BIGGERS, CLERK/ADMINISTRATOR
By_____
Deputy

| | |
|---|---|
| In re<br>SYLVESTOR STRONG,<br><br>    On Habeas Corpus. | F052019<br>(Fresno County Sup. Ct. No. 380750-0) |

BY THE COURT:*

    The petition for writ of habeas corpus filed in this court on January 16, 2007, is denied.

_____ Acting Presiding Justice

*Before Levy, Acting P.J., Gomes, J. and Kane, J.

MC-275

Name  **Sylvester Strong**

Address  **Correctional Training Facility**

**P.O. Box 689**

**Soledad, CA 93960**

CDC or ID Number  **D-99287**

COURT OF APPEAL
FIFTH APPELLATE DISTRICT
**FILED**

JAN 1 6 2007

*LEISA V. BIGGERS, CLERK/ADMINISTRATOR*
By_____
Deputy

## APPELLATE COURT OF CALIFORNIA
## FIFTH APPELLATE DISTRICT
(Court)

*In re* SYLVESTER STRONG, *on Habeas Corpus*
~~Petitioner~~
vs.
~~ARNOLD SCHWARZENEGGER, Governor~~
~~of the state of California.~~
~~Respondent~~

PETITION FOR WRIT OF HABEAS CORPUS

No.

**F 052019**

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

Old #'s FO50235
FO 444420
(n) 50235 /v

**This petition concerns:**

[ ] A conviction      [ ] Parole

[ ] A sentence      [ ] Credits

[ ] Jail or prison conditions      [ ] Prison discipline

[XX] Other *(specify):* Governor's reversal of grant of parole

1. Your name: Sylvester Strong

2. Where are you incarcerated? Correctional Training Facility, Soledad, California

3. Why are you in custody? [XX] Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

       Second degree murder

   b. Penal or other code sections: 187

   c. Name and location of sentencing or committing court: Superior Court of California, County of

       Fresno, Central Courthouse

   d. Case number: 380750-0

   e. Date convicted or committed: September 12, 1988

   f. Date sentenced: October 21, 1988

   g. Length of sentence: 15 years to life plus 3 for assault

   h. When do you expect to be released? ASAP

   i. Were you represented by counsel in the trial court? [ ] Yes.   [ ] No. If yes, state the attorney's name and address:
       N/A

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty   [XX] Guilty   [ ] Nolo Contendere   [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial
       N/A

PETITION FOR WRIT OF HABEAS CORPUS

6.  GROUNDS FOR RELIEF
    **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

**PLEASE SEE APPENDIX "A" AT PAGE 6 FOR ANSWERS TO 6 ET SEQ.**

a.  Supporting facts:
    Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

**PLEASE SEE APPENDIX "A" AT PAGE 6 FOR ANSWER TO 6(a)**

b.  Supporting cases, rules, or other authority (optional):
    *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

**PLEASE SEE APPENDIX "B" AT PAGE 13 FOR ANSWERS TO 6(b)**

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes. ☐ No. If yes, give the following information:

    a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): N/A

    _____

    b. Result: _____    c. Date of decision. _____

    d. Case number or citation of opinion, if known: _____

    e. Issues raised: (1) _____

       (2) _____

       (3) _____

    f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

    _____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☐ No.  If yes, give the following information:

    a. Result: _____    b. Date of decision: _____

    c. Case number or citation of opinion, if known: _____

    d. Issues raised: (1) _____

       (2) _____

       (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    _____

    _____

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    THERE IS NO ADMINISTRATIVE REVIEW AVAILABLE

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    b. Did you seek the highest level of administrative review available? ☐ Yes. ☐ No.
       *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  [X] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a.  (1) Name of court: **Superior Court of California, County of Fresno**

      (2) Nature of proceeding (for example, "habeas corpus petition"): **Habeas Corpus**

      (3) Issues raised: (a)  **SAME AS RAISED HEREIN**

          (b) _____

      (4) Result (Attach order or explain why unavailable): **DENIED (see ATTACHMENT "A" after exhibits)**
      **The trial court merely regurgitated the Governor's decision which was contrary**
      **to trial testimony attached as an exhibit, the decision being unreasonable.**
      (5) Date of decision: **12/22/2006**

    b.  (1) Name of court: _____

      (2) Nature of proceeding: _____

      (3) Issues raised: (a) _____

          (b) _____

      (4) Result (Attach order or explain why unavailable): _____

      (5) Date of decision: _____

    c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

    _____

    _____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
    No delay

    _____

16. Are you presently represented by counsel?  [ ] Yes.  [XX] No. If yes, state the attorney's name and address, if known:

    _____

17. Do you have any petition, appeal, or other matter pending in any court?  [XY] Yes.  [ ] No. If yes, explain.
    Not certain, as the HC was filed in Fed. Disr. Cr. on 12/13/04 on
    what now appears to be a misunderstood plea agreement for fixed term
    and an OSC on the merits has yet to be issued.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
    This Court has original jurisdiction.

    _____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: *1-9-2007*                                    *Sylvester Olson*
                                                  (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]                 PETITION FOR WRIT OF HABEAS CORPUS
                                                      - 4 -

A P P E N D I X   "A"

Answers to 6, et seq.

INTRODUCTION

COMES NOW Sylvester Strong (hereafter Petitioner) with his writ of habeas corpus challenging Governor Schwarzanegger's reversal of Petitioner being found suitable for parole by the Board of Parole Hearings (hereafter Board).

On April 6, 2006, in a similar matter, the Honorable B. Conklin held that "petitioner's assertions are inaccurate and do not justify the requested relief at this time" (EXHIBIT 1, p. 1), criticizing Petitioner, and rightfully so, for having not supplied "information (such as transcripts and supporting reports) concerning his parole hearings or the reasons parole has repeatedly been denied" (Id., p. 2). Petitioner now provides a complete record.

Notwithstanding Petitioner being found to not pose a current threat to public safety by the Board and Decision Review Unit, Petitioner had a contract with the state of California to be punished for second degree murder in exchange for his guilty plea. Therefore, Petitioner having satisfied the legislatively prescribed punishment for the facts and circumstances of the offense as plead and agreed to by the State; there being no evidence that Petitioner is a current threat to public safety, the governor's decision was arbitrary and an abuse of discretion.

This writ of habeas corpus is to give meaning to Petitioner's contract with the state for second degree murder and his indeterminate sentence of 15 years to life flowing therefrom.

///////

- 5 -

Claim I

IT WAS A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION WHEN THE GOVERNOR OF CALIFORNIA
REVERSED THE BOARD OF PAROLE HEARINGS GRANT OF PAROLE
WHEN THE GOVERNOR RELIED SOLELY ON IMMUTABLE FACTORS
THAT HAVE NO PREDICTIVE VALUE OF PETITIONER'S CURRENT
THREAT TO PUBLIC SAFETY.

Answer to 6(a) - Supporting facts

On April 1, 1988 the District Attorney of Fresno County filed

a five count information in the Superior Court of California, County

of Fresno (EXHIBIT 2). In a plea agreement, three of the counts

were dismissed. It was agreed that the dismissed counts would not

be used in sentencing considerations (People v. Harvey (1979) 25

Cal.3d 754, 758; see EXHIBIT 3, p. 5).

In the information filed in the Fresno County Superior Court

on April 1, 1988 (EXHIBIT 2), relevant to case at bench, in count

one, Petitioner was charged with a "violation of section 187 of the

penal code,$\underline{1/}$ a felony. The said defendant, on or about Decemeber

10, 1987, did willfully, unlawfully, and with malice aforethought

murder Diane Strong, a human being" (EX. 2, p. 1); and in count two,

Petitioner was charged with a "violation of section 245(a)(1) of

the penal code...on or about December 10, 1987, did willfully and

unlawfully commit an assault upon Lavelle Jones, with a deadly weapon,

to wit: a knife, and by means of force to produce great bodily injury"

(EX. 2, p. 2).

On September 12, 1988, Petitioner entered a "no contest" plea

to both counts (EXHIBIT 4, Change of Plea" at  RT 20:13-16,

1. All statues and regulations are California, unless otherwise noted.

- 6 -

21:16-23; 22:3-11).

Petitioner has been continually imprisoned since the date of the instant offense, December 10, 1987. As of the date of Petitioner's parole suitability hearing when he was found suitable for parole, May 31, 2006, Petitioner had been imprisoned 19 years 3 months. With conduct credits (Penal Code § 190 [1987 ed.]; California Code of Regulations, Title 15 (hereafter Cal. Code Regs., tit. 15), § 2410), applying only to the indeterminate term, commencing November 2, 1988, Petitioner has served the equivalent of 24 years. Petitioner's release date was fixed, pursuant to Cal. Code Regs., tit. 15, § 2403(II-C) [18-19-20 years]) (EXHIBIT 6, HT[06] 105:26),[2/] the term being fixed at 19 years, plus 6 months for use of a weapon. When conduct credits are applied to the uniform term matrix, Petitioner's release date should have been approximately May of 2001. It is the May 31, 2006 parole suitability hearing that the governor's decision flows from.

At the instant parole suitability hearing, Petitioner was sworn to tell the truth (HT 16:16-20). The facts of the controlling offense were taken from the POR at pages 2-5 (EXHIBIT 6), incorporated into the record (HT 16:22-17:5), then Petitioner filled in the gaps. It is these facts from which the governor derived his facts for his decision (EXHIBIT 7). The facts being as follows by the governor:[3/]

---

2.  Parole hearing transcripts will be referred to as HT followed by page and line number, e.g., (HT 1:1).

3.  The facts as presented in the POR and governor's decision are a "Readers Digest" version and do not provide a complete picture, thus as EXHIBIT 8 Petitioner provides relevant pages from the Clerk's Transcript on appeal which he will cite from in his arguments. Such testimony may not be germane to Petitioner's current threat to public safety, but it is certainly germane to the truth.

Lavelle Jones was at the home of Diane Strong when Petitioner arrived at Mrs. Strong's front door. Petitioner told Mrs. Strong to open the door. Mrs. Strong would not open the door because she had a restraining order against Petitioner. "[Petitioner] then broke open the door and stumbled inside. Lavelle testified that [Petitioner] was holding a knife. [Petitioner] accused Lavelle of going with Diana, and he started calling Diana names and said, 'Bitch, I am going to kill you.' Diana tried to run but [Petitioner] grabbed her and started hitting her. He was still holding the knife. Diana screamed, "Sylvester, don't hurt me.' Lavelle began to leave and said, "Sylvester, don't you all hurt each other.' Diana ran into Levelle as she tried to leave through the front door. She lost her balance and fell to her knees by the entryway. [Petitioner] approached Lavelle, cut his hand with the knife and said he was going to kill him too. Lavelle ran out of the house."

It was Petitioner who called 911 for medical assistance, admitting he stabbed his wife (EX. 6, p. 2).

Relevant to the statement that Petitioner came through the door with a knife in his hand, "According to another officer's testimony, set forth in the probation report...[i]n the kitchen, he saw a butcher block knife holder with a knife missing..." (EX. 6, p. 1).

Mr. Lavelle did indeed testify Petitioner cut him with a knife, but does not know exactly when, but believes it was when Petitioner came at him (EXHIBIT 8, CT 32:11-33:17), and there is no testimony of Petitioner telling Mr. Lavelle that he was going to kill him too (pages related to objections omitted).

The cause of death was "a Hemorrhagic Shock due to Stab Wound to Neck and Chest" cutting "the right internal jugular vein, and cut the Azygous vein" (EXHIBIT 6, p. 4).

On November 3, 1998, Petitioner was found unsuitable for parole at his initial parole suitability hearing (EXHIBIT 9, '98 decision). The primary reason for finding Petitioner unsuitable for parole was the commitment offense: "The offense was carried out in an especially cruel and callous manner which exhibits a callous disregard for life and suffering of another" (EX. 9, '98 decision, p. 1:11-14). It

- 8 -

was also noted that Petitioner's psychological evaluation, prepared
by the Board's own forensic experts (see EXHIBIT 10, 1998
psychological evaluation), found Petitioner's "violence potential
is estimated to be somewhat below average relative to this inmate
population" (EX. 9, '98 decision p. 3:12-15).

On September 24, 2001, Petitioner second parole suitability
hearing, he stipulated to a one year deferral (EXHIBIT 11).  A
psychological evaluation was prepared for the 2001 hearing (EXHIBIT
12, wherein the Board's forensic expert concluded Petitioner's
"violence potential if released to the community is therefore
estimated to be no higher than the average citizen in the community"
(EX. 12, p. 5).

On August 27, 2002, Petitioner was found unsuitable for parole
at his third parole suitability hearing (EXHIBIT 13, '02 decision).
The primary reason for finding Petitioner unsuitable for parole was
again the commitment offense: "The offense was carried out in an
especially cruel and callous manner.  Multiple victims were attacked
and injured.  The victim was abused, defiled during the offense.
The offense was carried out in a manner that demonstrates an
exceptionally callous disregard for human suffering, and the motive
for the crime was inexplicable and trivial in relation to the offense"
(EX. 13, '02 decision, p. 1:14-22).  It was noted that Petitioner's
2000 psychological evaluation (EXHIBIT 12) was "not totally supportive
in that there are areas of concern" then citing immutable factors
commented on by the Board's forensic expert (EX. 13, '02 decision,
pp. 2:15-3:1).  The Board's interpretation of the evaluation was
cleared up by its author, Dr. Howlin (EXHIBIT 14).

- 9 -

On October 21, 2003, Petitioner was again found unsuitable for parole at his fourth parole suitability hearing (EXHIBIT 15, '03 decision).  The primary reason for finding Petitioner unsuitable for parole was again the commitment offense: "Paramount reasoning would be the timing and gravity of the committing offense, Mr. Strong. The offense was carried out in a vicious and brutal manner" (EX. 15, '03 decision, p. 1:14-17); "The motive for this crime was inexplicable and very trivial.  The offense was carried out...in an exceptionally insensitive disregard for human suffering" (EX. 15, p. 2:4-8).  In reference to Petitioner's psychological evaluation, which was the 2000 evaluation (EX. 12), the Board stated it to be "adequate" (EX. 15, p. 3:7).

On November 18, 2004, Petitioner was again found unsuitable for parole at his fifth parole suitability hearing (EXHIBIT 16, '04 decision).  The primary reason for finding Petitioner unsuitable for parole was again the commitment offense: "This offense was carried out in an especially cruel and callous manner" (EX. 16, '04 decision, p. 1:15-16); "The offense was carried out in a dispassionate -- it was calculated, because you went there" (EX 16, p. 1:20-21); "The motive for this crime was inexplicable" (EX. 16, p. 2:2).  A new psychological evaluation was prepared by Dr. Sexton (EXHIBIT 17). Dr. Sexton concluded that Petitioner has "no more violence potential than the average male in the general population of equal age" (EX. 17, p.3).  The Board commented, "the most recent psychological evaluation shows that you're making progress" (EX. 16, p. 3:14-17).

Petitioner was found suitable for parole at his sixth parole suitability hearing (EXHIBIT 5, HT[06] 99-114).  For this hearing

the Board relied on Petitioner's 2004 psychological evaluation (EXHIBIT 17). A review of the 2006 decision will contrast, after four actual parole hearings, how the reasons given to deny parole are suddenly reversed and are now favorable to suitability.

In reversing the Board's finding of suitability for parole, the governor, after reviewing the facts of the crime set out above, the governor relied on "[t]he gravity of this shocking crime is alone sufficient for me to conclude presently that Sylvester Strong's release from prison would pose an unreasonable public-safety risk. The Fresno County District Attorney's Office expressed to the 2006 Board its opposition to Mr. Strong's parole, based in part on the gravity of the murder he committed" (EXHIBIT 7, p. 3).

C O N C L U S I O N

Based on court records, the foregoing facts and exhibits in support thereof, and the attached memorandum of law, it is respectfully requested that this Court issue and Order to Show Cause why relief should not be granted and the Governor's decision to reverse Petitioner's grant of parole by the Board should not be vacated and Petitioner immediately released on parole with any and all excess conduct credits applied to any period of parole Petitioner may have to serve.

Date: _1-9-2007_

Respectfully submitted,

Sylvester Strong
Petitioner in pro per

- 11 -

V E R I F I C A T I O N

    I, Sylvester Strong, hereby declare under penalty of perjury that I have read the foregoing facts and declare them to be true, and that the exhibits in support of the facts are true copies of the original documents.  Doing so this _9th_ day of _JANUARY_, 2007, at Soledad, California.

                                        Sylvester Strong
                                        Petitioner in pro per

P R A Y E R   F O R   R E L I E F

    I, Sylvester Strong, state that I have no other relief save habeas corpus and therefore pray that this honorable court:

1.  Issue an Order to Show Cause why relief should not be granted;

2.  Appoint counsel to protect Petitioner's rights;

3.  Grant discovery and conduct an evidentiary hearing as needed to further develop evidence in support of the claim, facts, and arguments;

4.  Declare the rights of Petitioner;

5.  Grant any other relief deemed necessary to advance and preserve the integrity of justice.

      Date: _1- 9- 2007_

                              Prayerfully submitted,

                              Sylvester Strong
                              Petitioner in pro per

A P P E N D I X   "B"

M E M O R A N D U M   O F   L A W

Claim I

IT WAS A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION WHEN THE GOVERNOR OF CALIFORNIA
REVERSED THE BOARD OF PAROLE HEARINGS GRANT OF PAROLE
WHEN THE GOVERNOR RELIED SOLELY ON IMMUTABLE FACTORS
THAT HAVE NO PREDICTIVE VALUE OF PETITIONER'S <u>CURRENT</u>
THREAT TO PUBLIC SAFETY.

Answer to 6(b) – Supporting cases and authorities

STANDARD OF EVIDENCE

In 1985, in <u>Superintendent v. Hill</u> (1985) 472 U.S. 445, the

United States Supreme Court applied the "some evidence" standard

to prison <u>disciplinary</u> hearings. In an ambiguous decision, the High

Court held that all "prison administrators" needed for a

determination of guilt was "some evidence" because "prison

disciplinary proceedings take place in a highly charged atmosphere,

and prison administrators must often act swiftly on the basis of

evidence that might be insufficient in less exigent circumstances"

(<u>Id</u>., at 456), like a parole suitability hearing.

The ambiguity in the decision was when does the "some evidence"

standard apply, at the administrative review level or at the judicial

level? This ambiguity was cleared up in <u>Hamdi v. Rumsfeld</u> (2004)

542 U.S. 507, 124 S.Ct. 2633, the High Court explaining that it has

utilized the "some evidence" standard not as a standard of proof,

but rather as a standard of review when examining an administrative

record developed after an adversarial proceeding (<u>Hamdi v. Rumsfeld</u>,

<u>supra</u>, 124 S.Ct., at 2651 ["As the Government itself recognized,

we have utilized the 'some evidence' as a standard of review, not

- 13 -

as a standard of proof"]).

A parole suitability hearing not only "is not the equivalent of conduct of individual correctional officials. In procedural and substantive terms, this type of determination is more analogous to the sentencing determination made by the court" (In re Roberts (2005) 36 Cal.4th 575, 578-588), and the Board a "distinct entity" and not "correctional officials" (Id., at 589), but a parole suitability hearing is adversarial in that the parole candidate has a right to counsel and to ask questions (Penal Code § 3041.5); the prosecution has the right to be present and ask questions (Penal Code § 3041.7), in other words, the prisoner will be examined and has the right to cross-examine statements made by the prosecution. The "[some evidence] standard therefore is ill suited to the situation in which the habeas petitioner has received no prior proceedings before any tribunal and had no prior opportunity to rebut the Executive's factual assertions before a neutral decisionmaker" (Hamdi v. Rumsfeld, supra, 124 S.Ct., at 2651). The Governor is not a "neutral decisionmaker," making decisions in parole matters not for threat to public safety, but threat to political safety (see In re Dannenberg (2005) 34 Cal.4th 1061, 1105, dissenting opinion; Martin v. Marshall (N.D. Cal. 2006) 431 F.Supp.2d 1038, 1048 [this unfairness was not limited to Wilson and Davis, but is inherent in the Office due to the "Willie Horton Syndrome"]).

If the "some evidence" standard is applied to the decision by the Board, then judicial review is by a mere "some evidence," how then does the "some evidence" standard apply itself? If terrorists who are enemy combatants of the United States are entitled

to "a preponderance of the evidence" standard, are citizens entitled
to anything less?  Especially when the Board's own regulations mandate
"a preponderance of the evidence" standard in decisions (Cal. Code
Regs., tit. 15, § 2000(b)(50)).

A.  The Commitment Offense Is No Longer Reliable Evidence In
    Predicting Current Threat to Public Safety.

     The only statutory reason to deny Petitioner parole is the
"timing and gravity" of the offense (Penal Code § 3041(b)).  Our
Supreme Court has taken this to mean an indeterminately sentenced
prisoner is to be granted parole unless the prisoner "is presently
too dangerous to grant a fixed parole release date" (In re Dannenberg,
supra, 34 Cal.4th, at 1080).

     Petitioner has "an expectation that [he] will be granted parole
unless the [Governor] finds, in the exercise of [his] discretion,
that [he] is unsuitable for parole in light of the circumstances
specified by statute and by regulation" (In re Rosenkrantz (2002)
29 Cal.4th 616, 654).  Petitioner has not only a heightened
expectation of parole in that he has a contract with the state to
be punished for second degree murder and not first degree murder,
but also because he was found suitable for parole by the Board
(McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895, 903 [having been
found suitable for parole and a release date heightens a liberty
interest in parole]).  Thus, Petitioner had a reasonable expectation
that he would be granted parole after reaching the legislatively
prescribed punishment for the facts and circumstances of his
controlling offense.

     Every crime will have unique facts.  Merely reciting those facts,
as a prelude to expressions of moral outrage, does not amount to

- 15 -

"a preponderance of the evidence" or even "some evidence." As

recently opined, however, in In re Lee (2006) ___ Cal.App.4th ___,

2006 DJDAR 13961 (10/19/06), at 13963, with emphasis in original:

"The test is not whether some evidence supports the reasons the Governor cites
for denying parole, but whether some evidence indicates a parolee's release
unreasonably endangers public safety (Cal. Code Regs., tit. 15, § 2402, subd.
(a) [parole denied if prisoner 'will pose an unreasonable risk of danger to
society if released from prison"]; see e.g. In re Scott (2005) 133 Cal.App.4th
573, 595 ['The commitment offense can negate suitability [for parole] only if
circumstances of the crime rationally indicate that the offender will present
an unreasonable public safety risk if released from prison']; but see In re Lowe
(2005) 130 Cal.App.4th 1405 [suggested 'some evidence' applies to the factors,
not dangerousness].) Some evidence of the existence of a particular factor does
not necessarily equate to some evidence the parolee's release endangers public
safety."

"Some evidence" does not mean literally "any" evidence. If

it did, the protection afforded by due process would be meaningless

(see In re Caswell (2002) 92 Cal.App.4th 1017, 1029 [if "some

evidence" meant "any" evidence then "'some evidence' of unsuitability

for parole would exist in virtually every parole hearing, exposing

every grant of parole to the [Governor's] subsequent change of heart

or political whim"]). (Emphasis in original.)

While it is true when determining a prisoner's parole suitability

the Governor considers all relevant and reliable information,

including the timing and gravity of the offense, it is just as true

that the offense is not to be viewed in a vacuum as though it occurred

yesterday, but is to be put into perspective relative to time,

"entailing primarily what a man is and what he may become rather

than simply what he has done" (Greenholtz v. Inmates of Nebraska

Penal and Correctional Complex (hereafter Greenholtz) (1979) 442

U.S. 1, 10). Moreover, "the ultimate purpose of parole is...the

long-range objective of rehabilitation" (Id., at 13); and, although

the commitment offense is a consideration in any particular case,

"[t]he behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release" (Id., at 15).

The commitment offense, after 19 years is not "reliable" evidence that Petitioner is a <u>current</u> threat to public safety.  Indeed, see <u>In re Elkins</u> (2006) ___ Cal.App.4th ___, 2006 DJDAR 14489 (11/1/06); <u>In re Lee</u> (2006) ___ Cal.App.4th ___, 2006 DJDAR 13961 (10/19/06); <u>In re Scott</u>, <u>supra</u>, 133 Cal.App.4th, at 595; <u>Biggs v. Terhune</u> (9th Cir. 2003) 334 F.2d 910, 916-917; <u>Irons v. Warden of California State Prison-Solano</u> (E.D. Cal. 2005) 358 F.Supp.2d 942, 947 fn. 2; <u>Martin v. Marshall</u> (N.D. Cal. 2006) 431 F.Supp.2d 1038, 1047-1048; <u>Sanchez v. Kane</u> (C.D. Cal. 2006) ___ F.Supp.2d ___, 2006 WL 2252640, *11; <u>Rosenkrantz v. Marshall</u> (C.D. Cal. 2006) ___ F.Supp.2d ___, 2006 WL 2327085, *16-17).  <u>Rosenkrantz</u> is the guidon from which all second degree murders can be measured, the facts so well known they need not be repeated here, and Petitioner's case coming nowhere near to that of <u>Rosenkrantz</u>, and if <u>Rosenkrantz</u> has been paroled after 19 years, then the Governor cannot demonstrate Petitioner is a <u>Current</u> threat to public safety based on the offense alone.

While the governor extols Petitioner's post-conviction record, the governor is fixated on immutable factors: the commitment offense and Petitioner's violence against his wife prior to the offense. While the governor is correct in many of his observations, he is also in error in many.  The Governor's errors are not so much to be accounted to him, as he took his facts from the POR (EXHIBIT 6). The Governor stated, of Lavelle Jones, Petitioner "said he was going to kill him too" (EXHIBIT 7, p. 1; EXHIBIT 6, p. 3).  The POR, for

its information, claims to have relied upon the Preliminary Hearing
Transcripts (EXHIBIT 8), but a review of Levelle Jones testimony
no such statement is found.

Lavelle Jones did testify, however, and the Governor relied
on the testimony of Mr. Jones that Petitioner had the murder weapon
in his hand when Petitioner broke down the door (EXHIBIT 7, p. 1),
yet the Governor also includes the testimony of law enforcement on
the scene who found the murder weapon came from the kitchen of the
scene of the murder (EX. 7, p. 1; EX. 6, p. 4). The Governor also
relies on Mr. Jones' testimony for the basis of believing Petitioner
"engaged in some level of premeditation. Lavelle Jones testified
that when Sylvester entered the house he said, 'Bitch, I am going
to kill you.' Levelle also testified that when Sylvester cut him
with the knife he told him he was going to kill him too" (EX. 7,
p. 3). According to Mr. Jones' testimony, when Petitioner first
entered the house he and his wife started arguing (CT 26:1-4), then
Mr. Jones and Petitioner started arguing when Petitioner accused
Jones of going with his wife (CT 27:22-28:1). Then, according to
Mr. Jones, Petitioner then calmed down, lasting for two or three
minutes (CT 28:3-7). It was after two or three minutes when
Petitioner and his wife started fighting and then: "Q [sic] Okay.
Diane broke -- Diane was standing by me, and -- and Sylvester started
talking to her, calling her names and things. Q. What kind of names?
A. He told her, 'Bitch, I am going to kill you" (CT 28:14-18).
Petitioner has no recollection of saying that, but if he did, it
was not said when he entered the house as reported in the POR and
repeated by the Governor; thus, in that the Governor is in error

- 18 -

of Petitioner entering the house with knife in hand and saying,
"Bitch, I am going to kill you," there is no evidence that Petitioner
came to the scene with any intent to murder his wife, but rather,
in the heat of argument and out of his then inability to control
his anger did murder his wife.  Other than those discrepancies in
the Governor's decision, the offense happened pretty much as
described.

Petitioner's wife did have two defense wounds to her hand, and
two fatal stab wounds, one to her chest and the other through her
neck, killing her almost immediately.  Petitioner did not stab his
wife repeatedly.  Cf In re Capistran (2003) 107 Cal.App.4th 1299,
1302 [in a gang related murder the victim "was stabbed 15 times and
subsequently died."  Capistran "bragged about the crime to others."]
Fourteen years after being convicted of second degree murder Capistran
was found suitable for parole and Governor Davis reversed.  The
appellate court granted the writ.

Most recently the Second Appellate District Court opined in
In re Lee, supra, 2006 DJDAR 13961, at DJDAR, p. 13964-13965:

"Besides not being especially atrocious, heinous or callous, Lee's crimes have
little, if any, predictive value for future criminality.  Simply from the passing
of time, Lee's crimes alomst 20 years ago have lost much of their usefulness
in foreseeing the likelihood of future offenses than if he had committed them
five or ten years ago. (In re Scott, supra, 133 Cal.App.4th 573, 595 [past crime's
value for predicting future crime diminishes over time].)  Moreover, Lee's
motivation for the shooting--his desperate rage against Soong driving him toward
murder and suicide--augurs against any future offenses.  As one court explained,
a defendant's 'motivation' for the offense tends to show suitability when it
was 'the result of significant stress in his life, especially if the stress has
built over a long period of time'" (Id. at p. 596.)."

The Lee court went on, "Instead of being atrocious, Lee's conduct
involved no more than the necessary to commit his crimes.
(Rosenkrantz, supra, 29 Cal.4th at p. 683 [cannot deny parole based

- 19 -

on nature of offenses if defendant's acts were the minimum necessary
to commit the offense]; see also In re Elkins, supra, 2006 DJDAR14489,
at 14497 [minimum amount of blows/stabs to accomplish murder
does not necessarily show an especially brutal murder])."
Interestingly, the Lee court opined that Lee would have been in even
a better position to argue his case if he would have been convicted
of two first degree murders (In re Lee, supra, 2006 DJDAR, 13961,
13965). Moreover, once a petitioner convicted of second degree murder
"reaches that point" in time such that he would be "eligible for
parole if he had been convicted of first degree murder" it is
necessary to "consider if his offense would still be considered
especially egregious for a first degree murder" (In re Rosenkrantz,
supra, 29 Cal.4th, at 690, J. Moreno concurring, emphasis in
original). See In re Lee, supra, 2006 DJDAR 13961, 13963-13964 for
a "yardstick" as to what constitutes "particularly heinous, atrocious
or cruel." Like Lee, by this "yardstick" Petitioner's "crimes were
more commonplace than egregious" (Id., at 13963).

     This was not a random killing. Clearly, this was an isolated
period of aberrant behavior in Petitioner's life, his wife being
the victim of his violence, the problem starting with and the result
of cocaine abuse, becoming exacerbated going through divorce, the
victim giving Petitioner "a once-in-a-lifetime motive to kill"
(In re Van Houton (2004) 116 Cal.App.4th 339, 356).

     Like in Elkins, "a governor, in reviewing a suitability
determination, must remain focused not on circumstances that may
be aggravating in the abstract but rather, on facts indicating that
release currently poses 'an unreasonable risk of danger to society'

- 20 -

(§ 2402, subd. (a), accord Penal Code § 3041, subd. (b))" (In re Elkins, supra, 2006 DJDAR 14489, 14498). The gravity of the commitment offense had been used as the prime reason for unsuitability in every Board decision from 1998 through 2005 (see EXHIBITS 9, 11, 13, 15 and 16), then in 2006 the Board finding that Petitioner is not currently a threat to public safety, and passing the Decision Review Unit, confirming he is not a current threat to public safety, the Governor, "once more relying on the gravity of the offense, something that no amount of rehabilitative progress can ever change" (Id.), denied Petitioner parole, just as in In re Scott, supra, 133 Cal.App.4th, at 595; Biggs v. Terhune, supra, 334 F.2d, at 916-917; Irons v. Warden of California State Prison-Solano, supra, 358 F.Supp.2d, at 947 fn. 2; Martin v. Marshall, supra, 431 F.Supp.2d, at 1047-1048; Sanchez v. Kane, supra, ___ F.Supp.2d ___, 2006 WL 2252640, *11; Rosenkrantz v. Marshall, ___ F.Supp.2d ___, 2006 WL 2327085, *16-17; In re Lee, supra, 2006 DJDAR, at 13961; and In re Elkins, supra, 2006 DJDAR 14489, "[t]he Governor's decision reversing the Board's grant of parole on the basis of the facts of the offense lacks "some evidence" that granting parole posed 'an unreasonable risk of danger to society" (Id., at 14499).

B.  OPPOSITION LETTER FROM THE DISTRICT ATTORNEY IS NOT EVIDENCE SUPPORTING UNSUITABILITY FOR PAROLE.

While it is true that letters in opposition to parole may be submitted by the district attorney or other interested parties (Penal Code § 3042(a)(f)(3), and the Governor may consider such letters (In re Dannenberg, supra, 34 Cal.4th, at 1085), it is not within the statutes or regulations as a factor upon which parole can be denied.

Firstly, like opposition to parole from a victim, the district attorney and police department added no "new and significant adverse information" about the offense (Bono v. Benov (9th Cir. 1999) 197 F.3d 409, 421). The letter from the District Attorney makes nothing more than conclusions absent any evidence (EXHIBIT 5, HT 56:4-21). Secondly, as one appellate court opined, "[w]e find nowhere in the statutes or regulations where it states that parole should be granted or denied based on the position of the District Attorney's office. The decision to grant parole rests on the guidelines listed in section 2400 et seq and Penal Code section 3041. (Rosenkrantz, supra, 29 Cal.4th at p. 658 [there must be 'some evidence in the record before the Board [that] supports the decision to deny parole, based upon the factors specified by statute and regulation' (italics added)])" (In re Samble, 2006 WL 401282 (Cal.App. 6 Dist. 2/21/06); see also Rosenkrantz v. Marshall, supra, ___ F.Supp.2d ___, 2006 WL 2327085, *12 fn. 14 [evidence from these agencies was merely "cumulative" to the Governor's opinion and added no new evidence]). If the decision to grant or deny parole were to be influenced by the district attorney or some other agency, then all grants or denials of parole would be arbitrary because of the changing opinions of these agencies, as clearly evidenced in Rosenkrantz v. Marshall where the District Attorney flipped flopped back and forth, as did the Board (see Rosenkrantz v. Marshall, supra, 2006 WL 2327085, *1-8 for history of flip flops; Martin v. Marshall (N.D. Cal. 2006) ___ F.Supp.2d ___, 2006 WL 2642123, *1, Board's flip flopping on evaluation of same evidence). If the Board and Governor denies parole when opposed by the an agency, but sometimes also grant parole when opposed by

the same, such clearly results in an arbitrary use of the statute, reducing the parole hearing to a sham.

C.   PETITIONER ENTERED INTO A CONTRACT WITH THE STATE TO BE PUNISHED
     FOR SECOND DEGREE MURDER AND HAVING SATISFIED HIS END OF THE
     CONTRACT IT WAS A VIOLATION OF DUE PROCESS TO DENY HIM PAROLE.

Although, admittedly the State did not promise Petitioner a specific term to be served in exchange for his guilty plea (see Buckley v. Terhune (9th Cir. 2006) 441 F.3d 688; In re Shelton (2006) ___ Cal.4th ___, 37 Cal.Rptr3d 354), Petitioner did, nonetheless accept the State's offer of second degree murder with a realistic expectation of being punished within the legislatively prescribed range for a second degree murder (Cal. Code Regs., tit. 15, § 2403(c)) and not for first degree murder (Cal. Code Regs., tit. 15, § 2403(b)). "The degree of culpability the legislature chooses to associate with particular, factually distinct conduct has significant implications both for a defendant's very liberty, and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment" (Apprendi v. New Jersey (2000) 530 U.S. 466,495). The legislative prescription of 15 to 21 years for second degree murder and 25 to 33 years for second degree murder "is unquestionably of constitutional significance" (Id.). Whatever labels the Governor wants to use to justify his decision, "the relevant inquiry is not one of form, but of effect" (Id., at 494).

"Where a statute annexes a higher degree of punishment to a common-law felony, if committed under particular circumstances, an indictment for the offense, in order to bring the defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances with certainty and precision"

(<u>Id.</u>, at 480; see also <u>Henderson v. Morgan</u> (1976) 426 U.S. 637, 646).

As opined in <u>People v. Jerome</u> (1984) 160 Cal.App.3d 1087, 1096-1097:

> "It is true that a plea of guilty 'is deemed to constitute a judicial admission
> of every element of the offense charged.' (Citation.) But that admission
> acknowledges only the commission of the offense as charged, not as it might have
> been charged. California courts have long held that a plea of guilty to an
> accusatory pleading admits only such allegations as are actually charged. []
> [W]hen the prosecutor fails to charge different statements of the same offense,
> the defendant can be convicted by his plea only of the crime actually pled."

Petitioner entered into a contract with the state for the minimum

elements of the offense of second degree murder, malice aforethought

(EXHIBIT 2, p. 1), not with intent, deliberation, and certainly not

with premeditation, which the Governor used, stating Petitioner

"engaged in some level of premeditation" (EXHIBIT 7, p. 3). The

Governor also used the charges that were expressly dismissed (EX.

7, p. 3) pursuant to <u>People v. Harvey</u>, <u>supra</u>, 25 Cal.3d, at 758

(EXHIBIT 3, p. 5) in violation of Petitioner's contract with the

state.

"A plea agreement is, in essence, a contract between the

defendant and the prosecutor to which the court consents to be bound"

(<u>People v. Cunningham</u> (1996) 49 Cal.App.4th 1044, 1047). Plea

agreements are to be construed "using the ordinary rules of contract

interpretation. 'Plea agreements are contractual in nature and are

to be measured by contract standards'" (<u>Brown v. Pool</u> (9th Cir. 2003)

337 F.3d 1155, 1159; <u>People v. Shelton</u>, <u>supra</u>, 37 Cal.Rptr.3d, at

358). "[W]hen a plea rests in any significant degree on a promise

or agreement of the prosecutor, so that it can be said to be a part

of the inducement or consideration, such promise must be fulfilled"

(<u>Santobello v. New York</u> (1971) 404 U.S. 257, 262).

It is absolutely implausible that when Petitioner entered into

the plea offered by the government to second degree murder that he did so in order to later be punished for first degree murder. No person enters into a contract to pled guilty to a lesser offense with a lesser degree of culpability and stigma and punishment in order to later have his punishment fixed at that contemplated by first degree murder. Conversely, it surely can be said that it was not a term the Board would have power of nullification over. If that were the case, Petitioner would have never entered into the contract. And, if this were the situation, defense counsel would then had to been derelict in his duties to not warn Petitioner of the completely illusory nature of such a "plea." And, if the District Attorney foresaw this and secretly left this possibility open and gave away nothing in exchange for this plea, knowing he could later try the case before a politically charged parole board and argue for a greater punishment without the defendant's constitutional protections of a trial, then he would have betrayed the ethical duty as a representative of the government to conduct the government's business fairly and honestly (In re Ibarra (1983) 34 Cal.3d 277, 289 [invalid or illusory concessions offered by the state "constitutes a species of fraud"; see also Santobello v. New York, supra, 404 U.S., at 261 [plea bargain contracts "presuppose fairness in securing agreement between an accused and a prosecutor"]).

The state knows nothing more about the commitment offense than it did when it offered to and accepted Petitioner's contract for second degree murder. Petitioner had a realistic expectation to be punished within the legislatively prescribed matrix for second degree murder. The Board had done exactly that. The Governor has

- 25 -

violated Petitioner's contract with the state by reversing the Board's finding of suitability, thereby violating Petitioner's right to due process.

D.  Petitioner Is Entitled To Have Excess In Prison Custody Credits
    Applied To His Period Of Parole.

Petitioner has been imprisoned on the life offense since November 2, 1988; and his parole is to be for a period subject to discharge in 7 years.  Petitioner's term was fixed at 19 years pursuant to Cal. Code Regs., tit. 15, § 2403(c)(C-II), plus 6 months for use of a weapon, for a total term of 234 month, or 19 years 6 months (EXHIBIT 5, HT 106:18-107:21).  After deducting Petitioner's conduct credits, his total term was fixed at 166 months (HT 107:19-21), or a total of 13 years 10 months.  Petitioner exceeding his actual term now, by 7 years.

Excess credits are to be deducted from any period of parole Petitioner would have otherwise served (Cal. Code Regs., tit. 15, § 2345 ["If any custody credits remain after deducting it from the offense to which it applies, the remaining credit shall be deducted from the parole period"], citing In re Sosa (1980) 102 Cal.App.3d 1002; In re Ballard (1981) 115 Cal.App.3d 647).  See also In re Scott, supra, 133 Cal.App.4th, at 604; Sanchez v. Kane, supra, ___ F.Supp.2d ___, 2006 WL 2252640, *12; In re Elkins, supra, ___ Cal.App.4th ___, 2006 DJDAR, at 14499; McQuillion v. Duncan (9th Cir. 2003) 342 F.3d 1012, 1016; affirming district court order for discharge (McQuillion v. Duncan (C.D. Cal. 2003) 253 F.Supp.2d 1131, carrying out the intent of the Ninth Circuit remand in McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895).  See also Martin v. Marshall (N.D. Cal. 2006 [modification of judgment]) ___ F.Supp.2d ___, 2006 WL 2642123, *2

[surplus time in prison deducted from parole]).

E.  Petitioner Entering Into His Plea Agreement Prior To The Passage
Of Penal Code § 3041.2 It Was An Ex Post Facto Violation For
The Governor To Review Petitioner's Grant Of Parole.

This claim is made for preservation purposes in the event that
federal review is necessary, as it is doubtful that a state court
will grant this claim.

When this claim was raised in In re Rosenkrantz it was noted
that he was not the best candidate to argue this claim because, inter
alia, the Board was ordered by a court to fix Rosenkrantz' date
(In re Rosenkrantz, supra, 29 Cal.4th at 637), the real reason for
denial, perhaps, is that no court wants to be responsible for a
decision that would free several convicted murderers (Id., at 638),
as it is self-evident that the "well over 100 murderers" who committed
their offenses prior to the law and grants of parole reversed by
the governor are simply an ex post facto violation.

In a similar ex post facto violation claim, not available until
recently, the D.C. Federal Circuit Court, relying on Garner v. Jones
(2000) 529 U.S. 244: "Under Garner, a retroactively applied parole
or reparole regulation of guideline violates the Ex Post Facto Clause
if it 'creates a significant risk of prolonging [an inmate's]
incarceration" (Fletcher v. Reilly (D.C. Cir. 2006) 433 F.3d 867,
877, quoting Garner v. Jones, supra, 529 U.S., at 251). Whether
the Governor's review and reversal of Petitioner's grant of parole
is an ex post facto violatin in this case is to answer this question:
After being granted parole and passing the Decision Review Unit,
would Petitioner have been paroled but for the Governor's review?
Obviously yes, thus the law as applied created a "significant risk

of increasing his punishment" (<u>Id</u>., at 255).

If, as it is held, that the Governor is not a separate review per se, but only one additional level of administrative review for the Board <u>within the executive branch</u> (In re Rosenkrantz, <u>supra</u>, 29 Cal.4th, at 638 [article V, section 8(b) "simply created a new level of review, within the executive branch"]), then, if a court finds there is no evidence to support a denial of parole for the Board, the primary decisionmaker for the executive on parole matters, then neither can there be any evidence on which the Governor may rely to reverse a grant of parole after the Board, the first level of review within the executive, then the Decision Review Unit, second level of review within the executive, acts in carrying out the court's order. The Governor, acting as the Chief Executive of the Board, is not above the courts and must therefore carry out court orders and cannot second guess the courts.

C O N C L U S I O N

The Governor's decision was not only fixated on immutable factors but the Governor presented no contravening evidence to the psychological forensic experts finding that Petitioner would not pose a threat to public safety if released from prison at this time, nor did the Governor make any rational connections between his findings and Petitioner's **present** threat to public safety.

WHEREFORE, it is respectfully requested that this Court issue and Order to Show Cause for the respondent to demonstrate why the writ should not be granted and order the Governor's decision vacated, grant of parole reinstated, and the California Department of Corrections and Rehabilitation immediately calculate Petitioner's

- 28 -

term as instructed by the Court, and, apply excess conduct credits to any time of parole Petitioner may serve.

Date: 1-9-2007

Respectfully submitted,

Sylvester Strong
Petitioner in pro per

- 29 -