# EXHIBIT I

Court of Appeal, Fifth Appellate District - No. F052019
**S153106**

DOCKETED
AUG 14 2007
By K. Silva
No. S↑↓↑↓↑↓

# IN THE SUPREME COURT OF CALIFORNIA

En Banc

In re SYLVESTER STRONG on Habeas Corpus

The petition for review is denied.

SUPREME COURT
FILED
AUG - 8 2007
Frederick K. Ohlrich Clerk
DEPUTY

GEORGE
Chief Justice

# IN THE SUPREME COURT
# STATE OF CALIFORNIA

In the matter of:

SYLVESTER STRONG,

Petition for review.

_____/

CASE No. _____

(Appellate Court No. F052019,
Fifth Appellate District;
Sup. Ct. No. 380750-0,
Fresno County)

## PETITION FOR REVIEW

After Decision of the Court of Appeal, Fifth Appellate District,
Denying Writ of Habeas Corpus on May 24, 2007

Sylvester Strong, D-99287
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Petitioner in pro per

IN THE SUPREME COURT

STATE OF CALIFORNIA

In the matter of:

SYLVESTER STRONG,

Petition for Review

CASE No. _____

(Appellate Court No. F052019,
Fifth Appellate District;
Sup. Ct. No. 380750-0,
Fresno County.)

TO THE HONORABLE CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT AND THE ASSOCIATE JUSTICES OF THE COURT:

COMES NOW Sylvester Strong (hereafter Petitioner) respectfully requesting review of the decision of the Court of Appeal, Fifth Appellate District, filed on May 24, 2007 (ATTACHMENT A).

QUESTIONS FOR REVIEW

1. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION FOR THE GOVERNOR OF CALIFORNIA TO REVERSE THE BOARD OF PAROLE HEARINGS GRANT OF PAROLE ON A MODICUM OF EVIDENCE WHEN RECENT UNITED STATES SUPREME COURT PRECEDENCE MANDATES "A PREPONDERANCE OF THE EVIDENCE" STANDARD OF EXECUTIVE DECISIONS WHEN A PRISONER HAS A "LIBERTY INTEREST" IN THE OUTCOME OF THE PROCEEDINGS?

2. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION FOR THE GOVERNOR OF CALIFORNIA TO REVERSE THE BOARD OF PAROLE HEARINGS GRANT OF PAROLE WHEN THE GOVERNOR RELIED SOLELY ON IMMUTABLE FACTORS THAT HAVE ZERO PREDICTIVE VALUE OF PETITIONER'S <u>CURRENT</u> THREAT TO PUBLIC SAFETY?

- 1 -

3.   WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION FOR THE GOVERNOR OF CALIFORNIA TO REVERSE PETITIONER'S GRANT OF PAROLE WHEN PETITIONER ENTERED INTO A CONTRACT WITH THE STATE OF CALIFORNIA FOR SECOND DEGREE MURDER AND HAD SATISFIED THE LEGISLATIVELY PRESCRIBED PUNISHMENT FOR THE OFFENSE AND THERE WAS NO EVIDENCE PETITIONER IS A <u>CURRENT</u> THREAT TO PUBLIC SAFETY?

II

NECESSITY FOR REVIEW

This Petition for Review should be granted because it raises a question of first impression to this Court since <u>Hamdi v. Rumsfeld</u> (2004) 542 U.S. 507, 124 S.Ct. 2633, holding that the standard of proof for an administrative hearing is "a preponderance of the evidence" standard with the standard of judicial review being the "some evidence" standard, clarifying the ambiguity of <u>Superintendent v. Hill</u> (hereafter <u>Hill</u>) (1985) 472 U.S. 445. Thus, this Court needs to revisit <u>In re Rosenkrantz</u> (2002) 29 Cal.4th 616.

The second question needs to be settled by this Court to provide consistency throughout the state in the varying appellate districts. A prisoners liberty should not depend on which county or appellate district he or she is out of and which judge he or she may get on a any given day. This Court's simply denying review on writs granting relief when less egregious cases are being denied relief simply because of the county or appellate district are so disparate that they are patently arbitrary; thus, this Court is required to provide guidance.

The third question presented is in dire need of guidance by this Court to assure that contracts with the state in plea bargain agreements are honored by the Executive and defendants are not tricked

- 2 -

into pleading guilty to lesser offenses with the expectation of being punished for what was agreed to and not have their sentences increased by Executive fiat years later on greater elements of the offense with the constitutional safeguards of a trial.

### JURISDICTION OF THE COURT

This Court has sole jurisdiction to issue opinions of questions of statewide interest (Cal. Rules of Court, Rule 29(a)(1)).

### HISTORY OF THE CASE

The facts are set out in the habeas corpus at pages 6 through 11, incorporated herein by reference. In short. In a <u>Harvey</u> plea (<u>People v. Harvey</u> (1979) 25 Cal.3d 754, 758) Petitioner entered into a plea agree; a "contract," with the state of California, to one count of second degree murder and one count of assault with a deadly weapon. The information to the charge of murder was to one count of second degree murder, charging Petitioner with the minimum elements of the offense, "malice aforethought" (see EXHIBIT 2 to habeas corpus). It was Petitioner understanding that a <u>Harvey</u> plea prevented his plea for second degree murder from ever being elevated to first degree, and therefore had a reasonable expectation of being punished for second degree murder, and no more. On September 12, 1988, Petitioner entered a plea of "no contest" to the minimum elements of the offense of second degree murder (EXHIBIT 4 to habeas corpus).

Petitioner has been continuously imprisoned since the date of the instant offense, December 10, 1987. At the date of Petitioner parole suitability hearing at which he was found suitable for parole,

May 31, 2006, he had been imprisoned 19 years and 3 months. With conduct credits, Petitioner has served the equivalent of 24 years. When the Board of Parole Hearings (hereafter Board) fixed Petitioner's term and factored in conduct credits, he should have been paroled in May of 2001. If Petitioner would have been convicted of first degree murder, he would have been eligible for parole 3 years ago.

The victim of Petitioner's murder was his wife, in the process of divorcing. Petitioner stabbed his wife during an argument. Petitioner called for medical assistance. His wife was DOA, and Petitioner surrendered himself at the scene, admitting to the offense.

The Governor relied heavily on the Probation Officer's Report (POR) in reference to Lavelle Jones and the injuries to Petitioner's wife, making the crime scene sound like the Sharon Tate murder scene. Petitioner argued, and attached to his habeas corpus, the preliminary testimony of Lavelle Jones clearly demonstrating the POR is in gross error, and police reports state that there were "drops of blood," not blood all over the walls and floor. Moreover, the Governor states that Petitioner entered the house with knife in hand, but also refers to the police report finding the knife came from a butcher block from in the kitchen. It cannot be both.

### ARGUMENTS FOR REVIEW

1. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION FOR THE GOVERNOR OF CALIFORNIA TO REVERSE THE BOARD OF PAROLE HEARINGS GRANT OF PAROLE ON A MODICUM OF EVIDENCE, WHEN RECENT UNITED STATES SUPREME COURT PRECEDENCE MANDATES "A PREPONDERANCE OF THE EVIDENCE" STANDARD OF EXECUTIVE DECISIONS WHEN A PRISONER HAS A "LIBERTY INTEREST" IN THE OUTCOME OF THE PROCEEDINGS?

Relying on Hill, supra, 472 U.S. 445, this Court held in In re Rosenkrantz, supra, 29 Cal.4th 616, 656, that due process requires that the Governor's decisions to reverse a finding of suitability for parole by the Board need be supported only by "some evidence." The "some evidence" standard being the standard of proof. Petitioner asks, logically, if the standard of proof is "some evidence," and the standard of review is "some evidence," how then does the "some evidence" standard apply itself? Rosenkrantz requires revisiting.

Hill, supra, was ambiguous as to when the "some evidence" standard applied -- at the administrative decision level, or upon judicial review? That ambiguity was clarified in the recent decision of Hamdi v. Rumsfeld (2004) 542 U.S. 507, 124 S.Ct. 2633, at 2651, the High Court holding that the "'[some evidence]' standard therefore is ill suited to the situation in which a habeas petitioner has received no prior proceedings before any tribunal and had no prior opportunity to rebut the Executive's factual assertions before a neutral decisionmaker." The Board/Governor is not a "neutral decisionmaker." That was recognized by the dissenters in Dannenberg, opining, the Governor has "little to gain and potentially much to lose by granting parole, and accordingly, the incentive to give only pro forma consideration to parole decisions is strong." (In re Dannenberg (2005) 34 Cal.4th 1061, 1105). The Board is nothing more than an extension of the Governor's policies, finding less than one half of one percent suitable for parole.

TAKE JUDICIAL NOTICE of the sister opinion in Carrillo v. Fabian (2005) 701 N.W.2d 763, in which the Minnesota Supreme Court, in reviewing that state's "some evidence" standard in prison disciplinary

hearings, in light of Hamdi v. Rumsfeld, supra, 542 U.S. 507, and several federal circuit and sister state court decisions, held that the "'some evidence' standard is inappropriate for use by the DOC at the fact-finding level. We conclude that the preponderance of the evidence standard better protects against an erroneous deprivation of an inmate's liberty interest in his supervised release" (Carrillo v. Fabian, supra, 701 N.W.2d, at 777, emphasis in original).

Something that has seemed to have escaped this Court is the fact that the standard of proof mandated by the Board's own regulations, having the force and effect of law, is "a preponderance of the evidence" (Cal. Code Regs., tit. 15, § 2000(b)(50)). The standard of review, that is assuming the standard of proof was a preponderance of the evidence, is the "some evidence" standard. Any evidence, however, that lacks any real probative value cannot constitute even "some evidence."

In that Hamdi v. Rumsfeld, supra, 542 U.S. 507, 124 S.Ct. 2633, is United States Supreme Court precedent cleaning up the ambiguity in Hill that the standard of proof at the executive level is "a preponderance of the evidence" and judicial review is then "some evidence," this Court needs to revisit Rosenkrantz.

Whether by "a preponderance of the evidence" or "some evidence," the Board's decision was arbitrary, being unsupported by <u>any evidence</u> Petitioner is a <u>current</u> threat to public safety.

2. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION FOR THE GOVERNOR OF CALIFORNIA TO REVERSE THE BOARD OF PAROLE HEARINGS GRANT OF PAROLE WHEN THE GOVERNOR RELIED SOLELY ON IMMUTABLE FACTORS THAT HAVE ZERO PREDICTIVE VALUE OF PETITIONER'S <u>CURRENT</u> THREAT TO PUBLIC SAFETY?

Assuming, arguendo, the "some evidence" standard will be the standard for both Executive level decisions and judicial review, recently opined by the Second Appellate District in In re Lee (2006) 143 Cal.App.4th 1400, 49 Cal.Rptr.3rd, at 936-937:

> "The test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. (Cal. Code Regs. tit. 15, § 2402, subd. (a) [parole denied if prisoner 'will pose an unreasonable risk or danger to society if released from prison'], see e.g. In re Scott (2005) 133 Cal.App.4th 573, 595 ['The commitment offense can negate suitability [for parole] only if circumstances of the crime...rationally indicate that the offender will present an unreasonable public safety risk if released from prison'], but see In re Lowe (2005) 130 Cal.App.4th 1405 [suggested 'some evidence' applies to the factors, not dangerousness].) Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety." (Emphasis in original.)

While it is true the commitment offense must be <u>initially</u> considered and weighed by the Governor, it is just as true that the offense is not to be viewed in a vacuum as though it occurred only yesterday, but is to be placed into perspective relative to time, "entailing primarily what a man is and what he may become rather than simply what he has done" (<u>Greenholtz v. Inmates of Nebraska Correctional and Penal Complex</u> (1979) 442 U.S. 1, 10). And, although the commitment offense is a consideration in any particular case, "[t]he behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release (<u>Id.</u>, at 15; <u>In re Minnis</u> (1972) 7 Cal.3d 639, 645 [in prison conduct and potential for rehabilitation are of "paramount importance"). Thus, "[p]arole decisions are based in large measure on occurrences subsequent to the commission of the offense" (<u>In re Rodriguez</u> (1975) 14 Cal.3d 639, 652). As it was observed in <u>In re Andrade</u> (2006) 141 Cal.App.4th 807, 823, Pollak J., dissenting, "This record, like that in numerous recent cases,

- 7 -

strongly suggests that "California parole authorities are losing sight of that fact."

The Third Appellate District put it thusly: "The state now places greater importance on punishment as the purpose of imprisonment." (Pen. Code, § 1170, subd. (a)(1))" (In re Morrall (2002) 102 Cal.App.4th 280, 292). The court continued, "With respect to person sentenced to indeterminate terms, the purpose of punishment is satisfied by requirement of service of a minimum period before eligibility for parole and, when suitable for parole, by the determination of a release date in a manner that will provide uniform terms for offenses of similar gravity and magnitude with respect to their threat to the public" (Id.; see also Sanchez v. Kane (C.D. Cal. 2006) 444 F.Supp.2d 1049, 1062-1063 ["if the Governor's decision to deny parole based on the nature of the offense is permitted to stand, contrary to the parole statutes which logically measures parole eligibility on the reformation of the prisoner after a prescribed period of punishment, parole eligibility is an impossibility, not a possibility. The parole statutes do not vest the [Executive] with the power to resentence petitioner"]).

Assuming, however, the Board/Governor can retry the case and make an independent finding of "premeditation," the question now becomes is the offense "particularly egregious" for a first degree murder? It is one matter if the murder "was particularly egregious for a second degree murder, it is another matter whether any evidence would support the same conclusion for a first degree murder" (In re Rosenkrantz, supra, 29 Cal.4th, at 679, concurring, Moreno, J.).

Stating the murder is "especially callous," however, is not

- 8 -

enough because every murder can be described as a callous disregard for the suffering of another (see <u>In re Lee</u>, supra, 143 Cal.App.4th 1400, 49 Cal.Rptr.3d, at 937-939, cataloging cases to serve as a "yardstick" as to what constitutes "particularly heinous, atrocious or cruel"; see also <u>Rosenkrantz v. Marshall</u>, supra, 444 F.Supp.2d, at 1082-1083). The only statutory reason to deny Petitioner parole is the "timing and gravity" of the offense (Penal Code § 3041(b)). This Court has taken this to mean an indeterminately sentenced prisoner is to be granted parole unless the prisoner "is presently too dangerous to grant a fixed parole release date". (<u>In re Dannenberg</u> (2005) 34 Cal.4th 1061, 1080; see also <u>Sass v. California Board of Prison Terms</u> (9th Cir. 2006) 461 F.3d 1123, 1135, Reinhardt, Circuit Judge, dissenting [evidence must show <u>current</u> threat to public safety). "Thus, the Board/Governor, in reviewing a suitability determination, must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses 'an unreasonable risk of danger to society' (§ 2402, subd. (a); accord Pen. Code, § 3041, subd. (b)" (<u>In re Elkins</u> (2006) 144 Cal.App.4th 475, 50 Cal.Rptr.3d 503, 521). See also <u>Biggs v. Terhune</u> (9th Cir. 2003) 334 F.3d 910; <u>Irons v. Warden of California State Prison-Solano</u> (E.D. Cal. 2005) 358 F.Supp.2d 942; <u>Marshall v. Lansing</u> (3rd Cir. 1988) 839 F.2d 933; <u>U.S. ex rel Farese v. Luther</u> (3rd Cir. 1992) 953 F.2d 52; <u>Dunn v. United States Parole Commission</u> (10th Cir. 1987) 818 F.2d 743; <u>Quaglito v. Sullivan</u> (D.Minn. 1989) 719 F.Supp. 860. The judges in these cases are jurists of reason who have heretofore addressed the question of static factors of the crime having no relevance over time in predicting current dangerousness.

the Governor reverses, pro forma.

Simply, the Board/Governor may not rely upon "unreasonable inferences" to support a decision, and an "inference is not reasonable if it is based only on speculation" (People v. Holt (1997) 15 Cal.4th 619, 669). The Governor's decision made no rational connection between the commitment offense and Petitioner's current threat to public safety, the offense no longer being reliable evidence reducing the Governor's decision to speculation, violating Petitioner's right to due process.

3. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION FOR THE GOVERNOR OF CALIFORNIA TO REVERSE PETITIONER'S GRANT OF PAROLE WHEN PETITIONER ENTERED INTO A CONTRACT WITH THE STATE OF CALIFORNIA FOR SECOND DEGREE MURDER AND HAD SATISFIED THE LEGISLATIVELY PRESCRIBED PUNISHMENT FOR THE OFFENSE AND THERE WAS NO EVIDENCE PETITIONER IS A CURRENT THREAT TO PUBLIC SAFETY?

---

Petitioner incorporates by reference from his writ of habeas corpus, pages 23-26. In short.

Petitioner was charged with murder in violation of Penal Code § 187, the murder of a human being with malice aforethought. The state offered a plea agreement with Petitioner to plead guilty to the minimum elements of second degree murder for an indeterminate term of 15 years to life.

"[P]arole applicants in this state have an expectation that they will be granted parole" (In re Rosenkrantz, supra, 29 Cal.4th, at 654). Petitioner having entered into a contract with the state to be punished for second degree murder, has a heightened expectation of being granted parole within the ligislatively prescribed punishment for second degree murder, in accord with the elements of the offense

- 11 -

Our state appellate courts are coming to the same conclusions as held by federal courts for years. Opined in <u>In re Scott II</u> (2005) 133 Cal.App.4th 573, 594-595, fns. omitted:

> "The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense 'alone' is correct [citation], but the proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being 'Previous Record of Violence'). Reliance on such an immutable factor 'without regard to or consideration of subsequent circumstances' may be unfair [citation]; and 'runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.' [Citation.] The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. [Citation.] Thus, denial of release based solely on the basis of the gravity of the commitment offense warrants especially close scrutiny."

See <u>In re Weider</u> (2006) ___ Cal.App.4th ___, 2006 DJDAR 15795, 15802 (DJDAR 12/6/06); <u>In re Elkins</u>, supra, 144 Cal.App.4th 475, 50 Cal.Rptr.3d, at 518, 520, 521; <u>In re Lee</u>, supra, 40 Cal.App.4th 1400, 49 Cal.Rptr.3d, at 937); <u>In re Shaputis</u> (2005) 135 Cal.App.4th 217, 231-232 [accord, after 15 to 20 years the commitment offense has zero predictive value of future dangerousness and therefore is not reliable evidence; thus, parole decisions must be based on current threat to public safety.] Cf. <u>In re Andrade</u> (2006) 141 Cal.App.4th 807 [after 14 years the appellate court relied on commitment offense to sustain denial of parole.] Virtually, all of the Governor's decisions to reverse the Board's findings of suitability for parole, "it appears that gubernatorial reversals of Board decisions granting parole are most often based solely or primarily on the gravity of the inmate's offense" (<u>In re Scott II</u>, supra 133 Cal.App.4th, at 594 fn. 7). Petitioner has been imprisoned for 18 years, the commitment offense having zero reliability, and the Governor's reversal of his parole release date was no different than the others

- 10 -

as pled, not for how it may have been charged and certainly not to be transmuted by Executive fiat to life without the possibility of parole.

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles" (citations) (In re Shelton (2006) ___ Cal.4th ___, 37 Cal.Rptr.3d 354, 358). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties" (Cal. Civil Code, § 1638).

Petitioner did not pled guilty to the minimum elements of the offense to later be subjected to the Executive nullifying the contract and retrying the case without Petitioner being afforded the constitutional safeguards of a trial (see Apprendi v. New Jersey (2000) 530 U.S. 466, 485; Blakely v. Washington (2004) 542 U.S. ___, 124 S.Ct. 2531, 2537 [a defendant can only be "punished on the basis of facts reflected in the jury verdict or admitted by the defendant"]).

Although the constitution does not prohibit a state from transferring sentencing functions from a judge to a parole agency for indeterminately sentenced defendants (i.e., In re Roberts (2005) 36 Cal.4th 575, 587-588 ["In procedural and substantive terms, this type of determination is more analogous to the sentencing determination made by the court"]), "the existence of this power does not imply a further power in the State to immunize its acts, through the administrative agency, from the strictures of the Fourteenth Amendment" (Sturm v. California Adult Authority (9th Cir. 1967) 395 F.2d 446, 449). It has long been held that this nation is "'committed to a government of laws and not of men,' under which

it is "of utmost importance that the administration of justice be absolutely fair and orderly," and "the constitutional safeguards relating to the integrity of the criminal process attend every stage of a criminal proceeding" (Carey v. Musladin (2006) 549 U.S. ___, 2006 DJDAR 16061, 16064 c.2 (DJDAR 12/12/06) (citations omitted)).

Petitioner entered into a contract for the minimum elements of second degree murder. "Second degree murder is defined as the unlawful killing of a human being with malice aforethought" (People v. Neito Benitez (1992) 4 Cal.4th 91, 102); cf. Calvillo -Silva v. Home Grocery (1998) 19 Cal.4th 714, 733 fn. 14 ["For purposes of first degree murder, a deliberate and premeditated killing contemplates that 'the killing was preceded and accompanied by a clear, deliberate intent on the defendant to kill, which was the result of deliberation and premeditation"]). The Executive cannot not now, by Executive fiat, sub rosa, retry the case and change the contract because it doesn't like the terms. If that be the case, and the District Attorney foresaw this and secretly left this possibility open and gave nothing in exchange for this plea, the he would have betrayed the ethical duty as a representative of the government to conduct the government's business fairly and honestly (In re Ibarra (1983) 34 Cal.3d 277, 289 [illusory concessions offered by the state "constitute a species of fraud"; see also Santabello v. New York (1971) (404 U.S. 257, 261 [plea bargain contracts "presuppose fairness in securing agreement between an accused and the prosecutor"]).

## CONCLUSION

For the foregoing reasons, this Court should grant review, or

in the alternative, in that the lower court opinion is not reasonable in light of the facts, merely rubber stamping the Governor's decision and making no attempt to determine if Petitioner is a <u>current</u> threat to public safety; remand the habeas petition for a reasoned decision in light of the actual evidence, under the "preponderance of the evidence" standard.

Date: MAY 30, 2007

Respectfully submitted,

*Sylvester Strong*
Sylvester Strong
Petitioner in pro per

- 14 -