Sylvester Strong, D-99287
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Petitioner in pro se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SLYVESTER STRONG,

           Petitioner,

   v.

ARNOLD SCHWARZENEGGER, Governor;
BEN CURRY, Warden,

           Respondent.

_____/

CASE NO. C 07-4927 SI

PETITIONER'S TRAVERSE TO
RESPONDENT'S ANSWER TO ORDER
TO SHOW CAUSE; MEMORANDUM
OF POINTS AND AUTHORTIES

Judge: The Honorable Susan
Illston

## I N T R O D U C T I O N

Petitioner Sylvester Strong (hereafter Petitioner), who is
currently serving an indeterminate sentence of 15 years to life for
the murder of his wife, now traverses the respondent's answer to
his federal habeas application. Petitioner alleges that Governor
Arnold Schwarzenegger (hereafter Governor or Executive) violated
his right to due process and liberty interest in parole when the
Governor reversed Petitioner's grant of parole based solely on the
commitment offense when Petitioner had exceeded his minimum term
and the Governor, pointing to no evidence Petitioner is a CURRENT
threat to the public, relied on immutable factors, contrary to the
principle of rehabilitation articulated by the United States Supreme
Court.

## TRAVERSE TO RESPONDENT'S ANSWER TO ORDER TO SHOW CAUSE

Petitioner traverses the respondent's Answer dated February 15, 2008. Petitioner admits, denies, and realleges the following:

### I

In response to paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 14, 20 and 25 of respondent's Answer, Petitioner admits them to be true.

### II

In response to paragraph 1 of respondent's Answer, Petitioner denies that ne is in the lawful custody of the California Department of Corrections and Rehabilitation. It is true Petitioner was convicted of second degree murder, not on October 25, 1988, but on September 12, 1988 (Pet. EXHIBIT 4) and thereafter sentenced to 15 years to life for that murder; however, on May 31, 2006, the California Board of Parole Hearings found Petitioner not to be an unreasonable risk of danger to society, being rehabilitated, and found him suitable for parole (Pet. EXHIBIT 5, HT 99-114). On October 26, 2006, the Governor, citing no evidence Petitioner is a CURRENT threat to public safety or not rehabilitated, reversed the Board's decision (Pet. EXHIBIT 7). In that the Governor cited no evidence supporting his decision that Petitioner is "presently" a threat to public safety, Petitioner denies ne is in "lawful custody."

### III

In response to paragraph 2 of respondent's Answer, Petitioner denies the mischaracterization of now the murder of Petitioner's wife unfolded. "Facts" taken from the probation officer's report are secondhand hearsay providing a "Readers Digest" rendering of the unfolding of events. The only firsthand account was given by

Lavelle Jones under oath at the preliminary hearing, where between pages CT 26-28 (Pet. EXHIBIT 8), we find the following: After Petitioner's wife refused him entry into the home, Petitioner broke through the front door and started arguing with his wife. Petitioner accused Mr. Jones of going out with his wife. Mr. Jones calmed Petitioner down and the arguing subsided. After two or three minutes Petitioner and his wife started arguing again, and Petitioner grabbed his wife with one hand and started hitting her with his other hand. Petitioner's wife broke free and started running (it was at this point Petitioner grabbed a knife and ran after his wife). Mr. Jones left the residence. That is Mr. Jones' testimony as it relates to the fight between Petitioner and his wife. Petitioner then stabbed his wife. Mrs. Strong also had two defense wounds on a hand. When Petitioner realized what he had done, he immediately called 911. When the police arrived Petitioner pointed them to his wife and admitted to the stabbing. The stab wounds proved to be fatal, Petitioner's wife being DOA at the hospital.

IV

In response to paragraph 9 of respondent's Answer, Petitioner admits the District Attorney of Fresno County opposed parole of Petitioner. This opposition, however, is inconsequential in that such opposition is <u>not</u> a factor within parole statutes or regulations upon which parole may be denied (<u>Hayward v. Marshall</u>, ___ F.3d ___, 2008 WL 43716, *7 fn. 9 (9th Cir. 2008)).

V

In response to paragraph 12 of respondent's Answer, Petitioner admits that he submitted his habeas petition in the Fresno County

- 2 -

Superior Court and the court denied his habeas corpus, doing so on December 22, 2006 (please see ATTACHMENT A), not on April 6, 2006. Petitioner must apologize to the Court and respondent for accidentally attaching the incorrect Superior Court decision as an exhibit to the habeas application, the incorrect decision being the denial from Petitioner's challenge to the state now violating his plea contract of an 18 year lid on his indeterminate sentence of 15 years to life, which is not now before the Court. Petitioner in no way was trying to keep from the Court the state court's decision to receive an independent review on that ground, but rather the mistake was exactly that, a mistake. Petitioner was not trying to get an unfair advantage over respondent. Petitioner prays that the Court will not look at Petitioner in a bad light and will accept his deepest apology for this inadvertent mistake.

## VI

In response to paragraph 15 of respondent's Answer, Petitioner denies that he does not have a federally protected liberty interest in parole. Respondent's denial is not only foreclosed by Greenholtz v. Inmates of Nebraska Penal and Correctional Complex (hereafter Greenholtz), 442 U.S. 1, 8 (1979); Board of Pardons v. Allen, 482 U.S. 369, 377 (1987); McQuillion v. Duncan, 306 F.3d 895, 900-903 (9th Cir. 2002); Biggs v. Terhune, 334 F.3d 910, 914-915 (9th Cir. 2003); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007); reaffirmed in Irons v. Carey II, 505 F.3d 846 (9th Cir. 2007); and most recently Hayward v. Marshall, 2008 WL 43716, *4, supra, but the denial is disingenuous, wasting the Court's limited time and

- 3 -

resources to read through a meritless claim. The respondent has
had ample opportunity to take this issue to the United States Supreme
Court, but has chosen not to because the claim is meritless.
Petitioner will address this claim no further unless the Court
requests further briefing on the question.

## VII

In response to paragraph 16 of respondent's Answer, Petitioner
denies that the state court decision is not contrary to, or involved
an unreasonable application of, clearly established United States
Supreme Court law, or that the state court denial was not based on
an unreasonable interpretation of the facts in light of evidence
presented. Petitioner realleges that he does make a case for relief
under the Antiterrorism Effective Death Penalty Act of 1996 (AEDPA).
This denial coalesces with respondent's paragraph 17 of the Answer,
which Petitioner will address, with this claim more fully in his
memorandum of points and authorities.

## VIII

In response to paragraph 17 of respondent's Answer, Petitioner
denies that he had an opportunity to present his case to the Governor
as the Governor's review was of a cold record from which the Governor,
actually a legal aid with a rubber signature stamp, provided his
explanation, an explanation that is contrary to the facts and a
decision that is not supported by "some evidence" Petitioner is a
current threat to the public based on his rehabilitation pursuant
to the Greenholtz doctrine (Greenholtz, 442 U.S., at 8, supra ["the
state-created parole system serves the public-interest purpose of
rehabilitation and deterrence" ]).

IX

In response to paragraph 18 of respondent's Answer, Petitioner denies that the Governor conducted an individualized assessment of Petitioner's parole suitability and considered all relevant and reliable evidence. Relying on "facts" that are third-hand hearsay lifted from the probation officer's report when trial testimony proves those "facts" wrong is not "reliable evidence." Petitioner will address this claim more fully in his memorandum of points and authorities.

X

In response to paragraph 19 of respondent's Answer, Petitioner agrees with the respondent that the United States Supreme Court has not ruled what is the standard of review regarding parole decisions. The Ninth Circuit, however, and the California courts, have held that "some evidence" is the standard of judicial review. This is yet another argument the respondent has had ample opportunity to take to the United States Supreme Court but fails to do so, but rather choosing to continue a meritless argument.

XI

In response to paragraph 21 of respondent's Answer, Petitioner denies that the Court cannot make an independent determination of whether Petitioner currently poses an unreasonable risk of danger or threat to public safety. If under a reasonable review of the record the Governor did not apply the correct standard of proof, a preponderance of the evidence, demonstrating a bias toward Petitioner, the Court may review the evidence de novo and reach an independent decision (Edwards v. Balisok, 520 U.S. 641, 647 (1997).

- 5 -

XII

In response to paragraph 22 of respondent's Answer, Petitioner denies that the Governor did not rely on immutable factors to reverse Petitioner's grant of parole, or that the Governor found that Petitioner lacks remorse or fails to accept responsibility; but rather, the Governor stated he does "not accept Mr. Strong's version of events" (Pet. EXHIBIT 7, p. 3). Petitioner will address this issue, and this denial by the respondent in general, more fully in his memorandum of points and authorities.

XIII

In response to paragraph 23 of respondent's Answer, Petitioner denies that he is not being punished for an offense greater than that of second degree murder for which he entered into a contract with the state of California to be punished for. While it is true Petitioner was sentenced to an indeterminate sentence of 15 years to life for second degree murder, he did so with a reasonable expectation of being punished within the legislatively prescribed matrix for second degree murder, not first degree murder or life without the possibility of parole, especially when the sentencing court placed an "18 year lid" on Petitioner's sentence. Petitioner will address this claim more fully in his memorandum of points and authorities.

XIV

In response to paragraph 24 of respondent's Answer, Petitioner denies that the Governor did not violate his right to due process and liberty interest in parole in reversing Petitioner's 2006 grant of parole.

- 6 -

XV

In response to paragraph 26 of respondent's Answer, Petitioner
denies that an evidentiary hearing is not necessary in this matter.
If the Court should question the validity of any evidence presented
by Petitioner or what the evidence establishes, or would find it
necessary to question witnesses to determine exactly what standard
of proof the Governor applies to review of parole decisions in the
first instance, then an evidentiary hearing is indeed necessary.

XVI

In response to paragraph 27 of respondent's Answer, Petitioner
affirmatively denies that he fails to state or establish any ground
upon which relief may be granted on federal habeas corpus.

XVII

Except as expressly admitted above, Petitioner affirmatively
denies, generally and specifically, each denial and allegation of
respondent's Answer, and specifically denies that his administrative,
statutory, or constitutional rights have not been violated.

Accordingly, Petitioner respectfully requests that this Honorable
Court grant the writ of habeas corpus, vacating the Governor's
decision and restating the decision by the Board of Parole Hearings
finding Petitioner suitable for parole.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A R G U M E N T

THE STATE COURT DENIAL OF PETITIONER'S HABEAS CLAIMS
WERE CONTRARY TO OR AN UNREASONABLE APPLICATION OF
CLEARLY ESTABLISHED FEDERAL LAW, AND BASED ON AN
UNREASONABLE DETERMINATION OF THE FACTS.

The respondent's arguments found at pages 7:20 through 11:16
of the Answer are procedural and have been long settled by the Ninth

Circuit, most recently in <u>Hayward v. Marshall</u>, 2008 WL 43716, *4-5, <u>supra</u>; therefore, Petitioner will not belabor the argument and burden the Court with reading through a response that can provide nothing new that the Court does not already know. Thus Petitioner will go directly to the merits of his claim, but reserve any rebuttal on procedural grounds if the Court should request further briefing.

**A.    The State Court Decision Is Contrary to an Unreasonable Interpretation of Clearly Established Supreme Court Law.**

Petitioner agrees with respondent that it is undisputed that <u>Greenholtz</u>, 442 U.S. 1, <u>supra</u>, is the only Supreme Court decision addressing due process in the context of parole consideration hearings. The only issue before the Supreme Court in <u>Greenholtz</u> was when does a state statute provide a "liberty interest" in parole that affords a state prisoner federal constitutional due process protection. Petitioner disagrees, however, that all <u>Greenholtz</u> requires to satisfy due process is that the parole authority need only give an opportunity to be heard and an explanation for the denial when parole is denied. What respondents misses, is that for due process to be satisfied when there is a liberty interest in parole, is when parole is deferred, the decisionmaker "makes recommendations designed to help correct any deficiencies observed" (<u>Id</u>., at 4-5). What the respondent would have, is by simply providing a hearing and reasons given, regardless if there is any evidence to support the reasons given to deny parole or lack of "recommendations designed to help correct any deficiencies observed," the Court has no jurisdiction to reach the merits of the claim.

Not only is respondent's position    untenable, but the Governor provided not a single recommendation that Petitioner could correct

to overcome any deficiencies, as Petitioner can never overcome the commitment offense.  Thus, Governor Schwarzenegger violated Petitioner's right to due process.

While it is true the United States Supreme Court has not ruled on what the "standard of judicial review" is in the parole context, inferior federal courts have bootstrapped the "some evidence" standard for judicial review of "prison disciplinary hearings" found in Superintendent v. Hill, 472 U.S. 445, 455-456 (1985), to the context of parole suitability (Sass v. California Board of Prison Terms, 461 F.3d, at 1128, supra). Cf. Henderson v. Carlson, 812 F.2d 874, 879 (3rd Cir. 1987) [Substantial evidence standard of review]; Kramer v. Jenkins, 803 F.2d 896, 900-901 (7th Cir. 1986) [a preponderance of the evidence standard.]

Under California law, however, a prison disciplinary hearing is not a parole suitability hearing, "in making a parole-related determination the conduct of the Board is not the equivalent of conduct of individual correctional officials. In procedural and substantive terms, this type of determination is more analogous to the sentencing determination made by a court" (In re Roberts, 36 Cal.4th 575, 589 (2005)). "The Board, in setting the release date for an indeterminate sentence, performs the same function as does the trial court in ordering a determinate sentence--it fixes a term of definite duration" (In re Hogan, 187 Cal.App.4th 819, 824 (1986)). It has been long held by the Ninth Circuit that "[t]he judicial imposition of a life sentence upon the appellant is no more than a legislatively mandated device for transferring the sentencing function from the State court to the State administrative agency

- 9 -

with a grant of jurisdiction over the appellant's person for a period sufficiently long to enable the agency to perform its functions under the State's indeterminate sentencing law" (Sturm v. California Adult Authority, 395 F.2d 446, 449 (9th Cir. 1967), Judge Browning concurring); Sellars v. Procunier, 641 F.2d 1295, 1301 fn. 15 (9th Cir. 1981) [Board is "an arm of the sentencing judge"]).

Petitioner would posit, that if a parole suitability determination and fixing of his term is tantamount to a sentencing hearing, then he is constitutionally entitled to the same due process protections as any sentencing hearing, not the minimal due process protection afforded for a prison disciplinary hearing. In that the Governor failed to provide Petitioner this level of due process, basing his "sentencing determination" on a meager "some evidence," he violated Petitioner's right to due process, and "the State's action cannot be justified simply by giving talismanic effect to the judically imposed maximum sentence" (Sturm v. California Adult Authority, 395 F.2d, at 449, supra).

In affirming the Governor's decision, the state court (Pet. EXHIBIT 1), reiterated the Governor's rendition of "facts" without, apparently, reviewing evidence, to include trial testimony of Lavelle Jones, an eye witness, and police reports quoted in the POR, which the Governor states to rely upon, but are, in fact, contrary to the Governor's Facts.

According to the Governor, facts taken from the POR (EXHIBIT 6, pp. 2-5), Lavelle Jones alleges, Petitioner broke down the front door of his estranged wife's house, and with knife in hand went directly for her, stating "Bitch, I'm going to kill you" and telling

Mr. Jones he was going to kill him too (Pet. EXHIBIT 7, p. 3). That
is not what happened.

A careful reading of the Preliminary Examination of Lavelle
Jones reveals the following facts: (1) when Petitioner first entered
the house he and his wife started arguing (Pet. EXHIBIT 8, CT 26:1-
4); (2) Petitioner then accused Mr. Jones of going with Petitioner's
wife (CT 27:22-28:1); (3) Mr. Jones testified that Petitioner then
calmed down, this calming lasted two to three minutes (CT 28:3-7);
(4) after two to three minutes Petitioner and his wife started
fighting and then, "Q [sic] Okay. Diane broke -- Diane was standing
by me, and -- Sylvester started talking to her, calling her names
and things. Q. What kind of names? A. He told her, 'Bitch,
I am going to kill you" (CT 28;14-18). Petitioner has no recollection
of saying that, but if he did, by Mr. Lavelle's own testimony, it
certainly was not when Petitioner entered the house as reported in
the POR and repeated by the Governor, a gross error in fact.
Moreover, (5), contrary to the Governor stating Petitioner entered
the house with knife in hand, claiming that was taken from the POR,
reported by an investigating officer in the POR, the murder weapon,
a knife, was reported to have come from the kitchen of the scene
of the murder, the knife being one from a butcher block knife holder
on top of the refrigerator and the same being found next to the victim
(Pet. EXHIBIT 6, p. 4). And, (6) although Mr. Jones did testify
that Petitioner cut him on the hand with the knife, which Petitioner
did do (Pet. EXHIBIT 8, CT 32:11-33:17), there is no testimony by
Mr. Jones that Petitioner told him, he was going to kill Mr. Jones,
too, as the Governor alleges. It was this preliminary testimony

that was stipulated to in forming the basis for the plea for second
degree murder (Pet. EXHIBIT 4, p. 12:1-10).

All of this evidence cogently rebuts the Governor's reversal
of Petitioner's grant of parole on the ground that there was "some
level of premeditation" (Pet. EXHIBIT 7, p. 3). "A trial court abuses
its discretion when the factual findings critical to its decision
find no support in the evidence. As the court noted in Stack v.
Stack (1961) 189 Cal.App.2d 357, 368 [], italics omitted, '[i]t would
seem obvious that, if there were no evidence to support the decision,
there would be an abuse of discretion'" (People v. Cluff, 87
Cal.App.4th, 991, 998 (2001)). The "evidence" relied on by the state
court, and Governor, is contrary to the evidence in the court records,
the sworn testimony of the eye witness, and the statement of the
investigating officer at the crime scene.

Moreover, Petitioner was charged with, and pled guilty to, a
stipulated second degree murder as charged in count one of the
information (Pet. EXHIBIT 4, p. 13:2-15), Petitioner, "on or about
December 10, 1987, did willfully, unlawfully, and with malice
aforethought, murder DIANE STRONG, a human being" (Pet. EXHIBIT 2,
p. 1). Under California law, "Second degree murder is defined as
the unlawful killing of a human being with malice aforethought"
(People v. Nieto Benitez, 4 Cal.4th 91, 104 (1992)); and, malice
itself involves "an element of viciousness--an extreme indifference
to the value of human life" (People v. Summers, 147 Cal.App.4th 180,
184 (1983); see CALJIC 8.11). In case at bench, in the heat of
argument, fighting with his estranged wife, Petitioner grabbed a
knife and fatally stabbed his wife. "There is no evidence that

- 12 -

[Petitioner] acted with cold, calculated, dispassion; or that he tormented, terrorized, or injured [his wife] before deciding to [stab] her; or that he gratuitously increased or unnecessarily prolonged her pain and suffering. .... Was the crime callous? Yes. However, are the facts of the crime some evidence that [Petitioner] acted with exceptionally callous disregard for [his wife's] suffering; or do the facts distinguish this crime from other second degree murders as exceptionally callous? No." (In re Smith, 114 Cal.App.4th 343, 367 (2003)).

In no way does Petitioner diminish the murder of his wife, but the offense is, as domestic motivated murders go, no different than most, but rather a garden variety spousal murder. In killing his wife, Petitioner did not "cover[] her house in her blood" (Pet. EXHIBIT 7, p. 3). Was there blood smears on the highchair and on the kitchen phone? Yes, Petitioner having blood on his hands and calling 911 to get help for his wife, and touching the highchair with his bloody hand, he left blood on objects he touched. And yes, there were large smears of blood and a pool of blood on the entry porch and doorway where Petitioner actually stabbed his wife (Pet. EXHIBIT 6, p. 4). Stabbing a person to death is not a bloodless act. But none of this, two defense wounds to Mrs. Strong's hands, and two fatal stab wounds does not make the offense "especially grave" (Pet. EXHIBIT 7, p. 3), as the Governor claims.

Nor can the Governor use the notion that "Sylvester had numerous opportunities to cease during the crime...yet chose to continue..." (Pet. EXHIBIT 7, p. 3). "That a prisoner could have avoided his or her commitment offense is not one of the section 2402 subdivision

(c)(1) factors to be considered by the Board in determining whether
the offense was committed in an 'especially heinous, atrocious or
cruel manner'" (In re Roderick, 154 Cal.App.4th, at 266, supra; see
also In re Barker, 151 Cal.App.4th, at 375, supra; In re Elkins,
144 Cal.App.4th, at 497, supra ["the Governor could not rely on the
fact that Elkins might have avoided killing to show his killing to
be especially brutal"]).

There is no evidence that the commitment offense was committed
"with some level of premeditation" as the Governor alleges.  "In
stating that Petitioner's crime was premeditated, the Governor
appeared to be addressing the standard set forth in In re Rosenkrantz,
29 Cal.4th at 658, 683, that when the Board finds parole unsuitability
based solely on the facts of the commitment offense, it must cite
some evidence of factors beyond the minimum elements of that offense.
However, the Governor's characterization of Petitioner's actions
as premeditated is incorrect because the trial court found the offense
was murder in the second degree" (Blankenship v. Kane, Slip Copy,
2007 WL 1113798, *7 (N.D. Cal. 2007)).  Being offered by the state,
Petitioner stipulated to second degree murder pursuant to Penal Code
§ 1192 (Pet. EXHIBIT 4, p. 4:25-5:11; [Penal Code § 1192.1, in
relevant part: "Upon a plea of guilty to an information or indictment
accusing the defendant of a crime...divided into degrees when
consented to by the prosecuting attorney in open court and approved
by the court...the defendant cannot be punished for a higher degree
of the crime or attempted crime than the degree specified"]).

During judicial proceedings up front, the district attorney
knew the facts and circumstances of Petitioner case, factors such

as the manner in which the murder was committed, motive, previous
criminal history of Petitioner's violence towards his wife and the
like, when an offer of second degree murder was made within the
parameters of the law.  The parameters of the law considered no doubt
included the very same factors set forth in suitability regulations;
that is, the legislatively prescribed punishment for second degree
murder is 15 to 21 years, depending on the manner of death and
relationship to the victim (Cal. Code Regs., tit. 15, § 2403(c)).
The United States is a democracy, not a monarchy.  Schwarzenegger
is a governor, not a king.  Just because a governor does not like
the terms of a plea agreement, or a jury verdict, he or she cannot
nullify that verdict and find elements of a greater offense simply
because he says so.  The Governor would only be justified in finding
elements of first degree murder if those elements were charged and
found to be true to begin with (see In re Van Houton, 116 Cal.App.4th
339, 352 (2004) [Van Hounton was originally charged with, found guilty
of special circumstances, and sentenced to death, Id., at 347]),
thus it was reasonable to consider those factors in her case.

     Finding the element of "premeditation" without the constitutional
safeguards of a trial violates and does violence to the very essence
of due process and the guarantee of a jury trial on every element
of the offense.  The governor is not a king nor a fuhrer, but the
Chief Executive, supposedly carrying out the law as written by the
legislature and interpreted by the judiciary.  For the Executive
to nullify the elements of an offense and degree of guilt established
by the judicial branch, is a gross violation of separation of powers.

- 15 -

**B.** **The Decision by the Governor Relying on the Commitment**
**Offense was not A Reliable Factor of "Some Evidence"**
**that Petitioner is A Current Threat to Public Safety.**

First and foremost, was the Governor's decision in the first
instance supported by "a preponderance of the evidence"?  See
In re Morrall, 102 Cal.App.4th 280, 302 (2002); In re Tripp, 150
Cal.App.4th 306, 312 (2007); Cal. Rules of Court, Rule 4.420(b);
Cal. Evid. Code § 115; Cal. Code Regs., tit. 15, § 2000(b)(50)).
The Board's reliance may initially satisfy finding a threat to public
safety by a preponderance of the evidence, or even a meager some
evidence standard, but over time, in light of Petitioner's
rehabilitation, the doctrine of Greenholtz, the Governor "denying
him a parole date simply because of the nature of [Petitioner's]
offense and prior conduct would raise serious questions involving
his liberty interest in parole" (Biggs v. Ternune, 910 F.3d, at 916,
supra; Irons v. Carey, 479 F.3d, at 665, supra). Thus, over time
and with rehabilitation, the decision being one of "equity," the
commitment offense loses predictive value and preponderates in favor
of parole, anything less would result in the expectation and
possibility of parole being a sham.

The respondent argues, "First, the Governor...specifically cited
his disbelief of Petitioner's version of events and questioned whether
Petitioner showed remorse or insight into the crime.  Second,
California's parole provisions explicitly state that parole may be
denied based on the factors of an inmate's commitment offense" (Ans.,
p. 11:20-22), citing In re Dannenberg, 34 Cal.4th, at 1094, supra.
However, the Dannenberg court cautioned that a life term offense
or any other offenses underlying an indeterminate sentence must be

- 16 -

particularly egregious to justify the denial of a parole date (Id., at 1094-1095); that is, "the violence or viciousness of the inmate's crime must be more than minimally necessary to convict him of the offense for which he is confined" (Id., at 1095).

A review of the Governor's decision (EXHIBIT 7), although the Governor describes the commitment offense, getting the facts wrong, as demonstrated above, he not only fails to articulate how two stab wounds resulting in death exceed the minimum to sustain Petitioner's conviction for second degree murder, and, most importantly, fails to even attempt to make any rational connection between the offense and Petitioner's <u>current</u> threat to the public. Petitioner will address the issue of remorse, insight, and the Governor's questioning Petitioner's version of event below, but first....

In analyzing recent developments in California's parole law, reviewing federal constitutional protections of the "some evidence" standard under the application of California law, the Ninth Circuit Court of Appeals recently concluded the suitability and unsuitability factors set out in Cal. Code Regs., tit. 15, § 2402(c) and (d), in the precedent setting case of <u>Hayward v. Marshall</u>, 2008 WL 43716, *5, <u>supra</u>:

"Even though these suitability and unsuitability factors are helpful in analyzing whether a prisoner should be granted parole, California courts have made it clear that the 'findings that are necessary to deem a prisoner unsuitable for parole,' <u>Irons [v. Carey]</u>, 505 F.3d [846,] at 851 [(9th Cir. 2007)], 2007 WL 2927359, at *3, are not that a particular factor or factors indicating unsuitability exists, but that a prisoner's release will unreasonably endanger public safety. <u>In re Dannenberg</u>, 156 Cal.App.4th 1387, 2007 WL 3408290, *9 (Cal. Ct. App. 2007), modified, 2007 Cal. App. LEXIS 1985, 2007 WL 4227229 (Cal. Ct. App. Dec. 3, 2007); <u>In re Lee</u>, 143 Cal.App.4th 1400, 1408, 49 Cal.Rptr.3d 931 (Cal. Ct. App. 2006); <u>In re Scott</u>, 133 Cal.App.4th 573, 595, 34 Cal.Rptr.3d 905 (Cal. Ct. App. 2005); <u>see</u> Cal. Penal Code § 3041(b) (providing that the Board 'shall set a release date unless...consideration of the public safety requires a more lengthy period of incarceration for this individual'). For our purposes, then, '[t]he test is not whether some evidence supports the reasons the Governor cites for denying

parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety.  Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety.'  Lee, 143 Cal. App.4th at 1408 (citations and footnotes omitted); see also In re Elkins, 144 Cal.App.4th 475, 499, 50 Cal.Rptr.3d 503 (Cal. Ct. App. 2006) (holding that the 'governor, in reviewing a suitability determination, must remain focused...on facts indicating that release currently poses 'an unreasonable risk of danger to society'" (citing Cal. Code Regs. tit. 15, § 2402(a))); Scott, 133 Cal.App.4th at 591 ('The factor statutorily required to be considered and the overarching consideration, is "'public safety.'" (citing Cal. Penal Code § 3041(b)))" (emphasis and ellipses in original).

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law (see Dunhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999)). Contrary to respondent's argument there is "no clearly established federal (law) provides that a state executive cannot base a parole denial on the factors of an inmate's commitment offense or criminal history" (Ans., p. 11:25-27), the United States Supreme Court, in the only case defining what parole consideration is to be based upon, clearly articulated that "rehabilitation" is the defining factor: "The decision turns on...primarily what a man is and what he may become rather than simply what he has done" (Greenholtz), 442 U.S., at 10 supra).  "It is important that we not overlook the ultimate purpose of parole which is a component of the long-range objective of rehabilitation" (Id., at 13). The High Court added, "The behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release" (Id., at 15).  Thus, REHABILITATION is the Greenholtz doctrine.  If a prisoner has served "the minimum term, less goodtime credits" (Id., at 4; Penal Code §§ 190, 2930, et seq. [1986 ed.]), and there is no evidence the prisoner is a CURRENT threat

to the public, that is, "rehabilitated," he or she is to be paroled (In re Rosenkrantz, 29 Cal.4th, at 655, supra; In re Sturm, 11 Cal.3d 258, 266 (1974) [the ultimate question is "whether the inmate will be able to live in society without committing additional antisocial acts"]). To continue incarceration of a prisoner after he or she has not only served the minimum term for his or her offense, but is rehabilitated, would be for punitive reasons bordering on vengeance and totally contrary to Greenholtz.

Federal and state courts have interpreted California Penal Code § 3041 to mean that if a crime is "particularly egregious" as to initially justify a denial of parole then the Board may do so, but, under the Greenholtz doctrine, the decision being one of "equity," over time and rehabilitation the crime loses value of predicting a current threat to public safety. The question yet to be concretely answered is when does the crime lose predictive value? Although Petitioner believes the crime loses predictive value when the uniform punishment proportionate to the commitment offense is reached in the legislative prescribed matrices found in Cal. Code Regs., tit. 15, § 2403 et seq., which is the only non-arbitrary indicator, the courts have taken a different approach.

The leading state case on the question of when the commitment offense loses predictive value, quoting Rosenkrantz v. Marshall, 444 F.Supp.2d, at 1084, supra, is In re Elkins, 144 Cal.App.4th, at 500, supra: "After nearly twenty years of rehabilitation, the ability to predict a prisoner's future dangerousness based simply on the circumstances of his or her crime is nil." Elkins is precedent setting because the California Supreme Court denied review and

depublication.  Elkins is not isolated in its interpretation of the
law, other state and federal cases include, but are not limited to:
In re Lee, 143 Cal.App.4th, at 1412, supra; In re Roderick, 154
Cal.App.4th, at 277; In re Tripp, 150 Cal.App.4th, at 318-319, supra;
In re Barker, 151 Cal.App.4th, at 374; In re Scott II, 133
Cal.App.4th, at 595 fn. 8, supra; In re Montgomery, 156 Cal.App.4th
930, 946 (2007); In re Dannenberg, 156 Cal.App.4th 1387, 1399 (2007);
and federal cases include, Hayward v. Marshall, 2008 WL 43716, *8,
supra; Willis v. Kane, 458 F.Supp.2d, at 1135, supra; Sanchez v.
Kane, 444 F.Supp.2d, at 1062, supra; Rosenkrantz v. Marshall, 444
F.Supp.2d, at 1084, supra; Thelander v. Kane, Slip Copy, 2007 WL
2220973, *8 (N.D. Cal. 2007); Tolliver v. Carey, Slip Copy, 2006
WL 3497670, *12 (E.D. Cal. 2006); Thomas v. Brown, Slip Copy, 2006
WL 3783555, *7 (N.D. Cal. 2006).

Federal courts in the Ninth Circuit are not the first to address
the use of static factors of the offense and prior history to deny
parole over time, ceasing to be reliable indicators of current risk
to public safety.  Cf. Marshall v. Lansing, 839 F.2d 933, 943 (3rd
Cir. 1988) [where a parole board's decision is based on mere words
and not impacting the prisoner's current suitability, the decision
lacks due process and must be vacated]; Dunn v. United States Parole
Commission, 818 F.2d 743, 745 [denial of parole based on facts
pertaining to the commitment offense that do not point to current
parole risk is a punitive measure that exceeds the Board's authority];
Quaglito v. Sullivan, 719 F.Supp. 860, 864 (D.Minn. 1989) [panel
must explain "rational connection" between offense and conclusion
that the prisoner is a current parole risk]; United States ex rel.

Farese v. Luther, 953 F.2d 52, 54 (3rd Cir. 1992) [negative aspects of offense selected to support parole denial non-compliant with preponderance standard]. The judges in these cases are jurists of reason who have heretofore addressed similar situations and ruled consonant with the concerns expressed by the Ninth Circuit in Biggs, Irons, and most recently Hayward.

While the commitment offense is like eye color and will never change, time and rehabilitation are not. There is a consensus among fair-minded jurists that, although the crime will never change, being the same twenty years ago that it will be twenty years from now, rehabilitation counts for something and after 15 to 20 years determinations of parole suitability must turn on postconviction factors, except in the most egregious of circumstances. Petitioner's murder of his wife is not one of the exceptions, especially in light of his rehabilitation over two decades, the crime losing predictive value.

All murders show the most debased human behavior, and Petitioner's is no different. As morally reprehensible as Petitioner's murder is, the Governor cannot merely state the facts of the crime and moral outrage in reversing Petitioner's grant of parole and not make a rational connection between the offense nearly 20 years ago and Petitioner's current risk to the public. The only victim of Petitioner's violence was his wife, after he started using cocaine; then, under the stress of divorce and the influence of cocaine, in a fit of anger because she would not give him money due him, he stabbed her, resulting in her death. Petitioner exhibited no violence prior to the few months leading up to the offense, and

no violence since.

The forensic experts who have evaluated Petitioner, taking all factors into account, as far back as 2000, it was Dr. Howlin's expert opinion that Petitioner's "violence potential if released into the community is therefore estimated to be no higher than the average citizen in the community" (Pet. EXHIBIT 12, p. 5); then in 2004 it was Dr. Sexton's expert opinion that Petitioner "appears to have no more violence potential than the average male in the general population of equal age" with "no precursors that would predict an increase in violence potential in the community" (Pet. EXHIBIT 17, p. 3).

There is no evidence in the Governor's decision that he even considered the forensic assessments, denying Petitioner the "individualized consideration" due process guarantees he is constitutionally entitled to (In re Minnis, 7 Cal.3d 639, 644 (1972); In re Rosenkrantz, 29 Cal.4th, at 655, supra; In re Barker, 151 Cal.App.4th, at 370 fn. 21, supra ["'The Board's failure to undertake the 'individualized consideration of all relevant factors' required by Rosenkrantz, supra [], also offends the Board's own regulations, which require that '[a]ll relevant, reliable information available to the panel shall be considered in determining suitability for parole.' ([§ 2[402], subd. (b), italics added [by the court]]; In re Ramos, Slip Copy, 2007 WL 439031, *13 (Cal.App. 6 Dist. 2007) ["Thus, it appears that the Board did not fully consider Dr. Rouse's psychological evaluation and therefore the Board did not meet its obligation to assess Ramos's risk of danger to society if released from prison by considering '[a]ll relevant, reliable information

available to the panel.' (Cal.Code Regs., tit. 15, § 2402, subd.
(b)"]). The Governor is bound to apply the same regulations as the
Board, and comply with the same principles of law. The Governor,
in case at bench, not only failed to consider and weigh Petitioner's
history of psychological evaluations by forensic experts favorable
to parole, but presented not a single piece of contravening evidence,
only his opinion supported by little more than what has become
unreliable factors.

Turning to the respondent's argument that the Governor relied
on his "disbelief of Petitioner's version of events and questioned
whether Petitioner showed remorse or insight into the crime."

Firstly, the Governor did not question Petitioner's remorse
or insight into the offense, as the evidence is totally contrary
to any opinion to that effect and would be arbitrary. What the
Governor wrote, was, "Mr. Strong says he accepts responsibility for
the murder and is remorseful for his actions" then goes on,
"Nevertheless...I do not accept Mr. Strong's version of events" (Pet.
EXHIBIT 7, p. 3). In that as soon as Petitioner realized his wife
was seriously wounded and called for help, surrendered to the police
admitting his guilt as soon as they arrived on the scene, and pled
guilty, and in every psychological evaluation the forensic experts
have maintained Petitioner accepts responsibility, and that in the
opinion of the forensic experts Petitioner is remorseful (Pet. EXHIBIT
12, p. 5 ["He appears to be insightful regarding events that led
to the crime and potential factors that contributed to the crime.
He seems to be genuinely remorseful....]; Pet. EXHIBIT 17, p. 1 ["It
is clear that he has a deep understanding of the underlying causes

- 23 -

Case 3:07-cv-04927-SI    Document 10    Filed 03/06/2008    Page 25 of 35

for the offense.... The inmate's remorse appears genuine and heart felt"]), and the Board, when finding Petitioner suitable for parole, unlike the Governor whose decision was predetermined in search of a justification, was able to observe Petitioner's demeanor and found him to "have shown sincere signs of remorse" (Pet. EXHIBIT 5, HT 105:1-2), any finding by the Governor that Petitioner does not accept responsibility and/or lacks remorse would be baseless and therefore arbitrary and capricious, unsupported by any evidence.

Secondly, does a differing in the unfolding of events make Petitioner a current threat to public safety nearly two decades after the offense? When it came down to the decision, the Governor did not reverse parole suitability because the content of Petitioner's response continued to demonstrate unsuitability, but based on the offense itself, "The gravity of this shocking crime is alone sufficient for me to conclude presently that Sylvester Strong's release from prison would pose an unreasonable public-safety risk" (Pet. EXHIBIT 7, p. 3). Conflicting versions is not an unsuitability factor listed in the parole statutes or regulations. Thus any contribution of this factor to the decision violates due process.

In that the Governor cited no evidence making a rational connection between the commitment offense and Petitioner's current threat to public safety, like a continued use of cocaine or violence towards females, such as female staff, and Petitioner has served nearly two decades and, by all behavioral and forensic evidence is fully rehabilitated, the Governor's decision violated Petitioner's right to due process, being unsupported by any evidence.
///////

- 24 -

C.  The State Court Decision Upholding the Governor's
    Denial Was Not Based on a Reasonable Interpretation
    of the Facts.

     Petitioner has proved that the Governor's decision to reverse

the Board's finding of suitability for parole, and the state court

decision, were objectively unreasonable in light of the facts, their

decisions not being supported by "some evidence" Petitioner is a

"current" public safety risk (28 U.S.C. § 2254(e)(1); Hayward v.

Marshall, 2008 WL 43716, *5-6, supra). It is not that Petitioner

merely disagrees with the Governor's and state court decisions, but

that the decisions do, indeed, violate clearly established United

States Supreme Court law in that time and rehabilitation, according

to Greenholtz, weighs in Petitioner's favor nearly two decades after

the predicate act. Therefore, the factual determinations were

unreasonable under the AEDPA standard, and the petition therefore

must be granted.

## C O N C L U S I O N

     For the foregoing reasons, it is respectfully requested that

the writ be granted and the Governor's decision be vacated and the

Board's decision finding Petitioner suitable for parole be reinstated

and Petitioner ordered released on parole within ten (10) days of

the Court's decision. Or, at the very least, in the alternative,

remand the decision back to the Governor, giving the Governor the

option to either render a new decision after considering "all reliable

and relevant information" and weighing the decision, not by "some

evidence" as a standard of proof, but a preponderance of the evidence

and explain how he applied the standard of proof used, and if not

doing so within 10 days, Petitioner is to be paroled.

DATED: _March 5, 2008_

Respectfully submitted,

_Sylvester Strong_
Sylvester Strong
Petitioner, in pro se

ATTACHMENT A

1    HC06CRWR678165-GDH-GA

FILED

DEC 2 2 2006

SUPERIOR COURT OF CALIFORNIA
COUNTY OF FRESNO
By_____ DEPUTY

8    **SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO**

9    **CENTRAL DIVISION**

11   **In re**                                    ) **No. 06CRWR678165    Dept. 74**
                                                  )
12   **SYLVESTER STRONG,**                         )
                                                  )    **ORDER**
13              **Petitioner**                     )
                                                  )
14   **On Habeas Corpus.**                         )
                                                  )

16      Having considered the petition for writ of habeas corpus
17   filed on December 6, 2006, the court finds that existing evidence
18   does not warrant the requested relief.

19      Petitioner challenges the Governor's decision reversing the
20   Parole Board's grant of parole.  According to the record,
21   petitioner was convicted of second-degree murder and sentenced to
22   15 years to life, plus three years for assault with a deadly
23   weapon.  The Board of Parole Hearings granted petitioner's parole
25   on May 31, 2006, after having previously denied him parole several
26   times.  (Exhibit 5 to petition, Parole Board Hearing Transcript,
27   p. 99.)  However, the Governor reversed the Board's decision on
28   October 26, 2006.

1    The stated basis for the Governor's decision to reverse the
2  Board's grant of parole included the fact that the offense was
3  especially grave, in part because of the manner in which he killed
4  his wife by breaking into her home, threatening to kill her and
5  then stabbing her multiple times with a kitchen knife. (Exhibit
6
7  7, Governor's Parole Release Review, p. 3.) These facts
8  demonstrated an especially callous disregard for her suffering and
9  life. (*Ibid.*) The Governor also noted that there was evidence of
-10 premeditation, including his threat to kill her as he entered the
11 house, and his threat to kill Lavelle Jones when he cut him with
12 the knife. (*Ibid.*) In addition, the Governor pointed out that
13 petitioner had been arrested on prior occasions for abusing Diana,
14
15 and that he told responding officers that "[t]he next time you
16 come out it will be for something." (*Ibid.*) Indeed, there was
17 evidence that petitioner engaged in a year-long course of violent
18 conduct against his wife before killing her. (*Ibid.*) The
19 Governor also noted that petitioner had numerous opportunities to
20 cease during the crime, yet he chose to continue and in doing so
21 "covered her house in her blood." (*Ibid.*) Thus, "the gravity of
22
23 this shocking crime is alone sufficient for me to conclude
24 presently that Sylvester Strong's release from prison would pose
25 an unreasonable public-safety risk." (*Ibid.*) The Governor also
26 pointed out that the Fresno County District Attorney's Office had
27 opposed the granting of parole based on the gravity of the murder.
28 (*Ibid.*)

1     The Governor reversed the Board's decision despite other
2   positive factors, including the fact that petitioner has accepted
3   responsibility for the murder and is remorseful for his actions.
4   (*Ibid.*)   However, the Governor noted that petitioner did attempt
5   to minimize his actions by stating that he intended to harm only
6   
7   Jones, a version of events that the Governor did not accept.
8   (*Ibid.*)   In addition, the Governor pointed out that petitioner has
9   been disciplined two times while in prison for threatening staff
10  and disruptive behavior, as well as being counseled six times for
11  less serious misconduct.   (*Id.* at p. 2.)   While he has received no
12  violations for substance use, he admitted to the Board that he did
13  use marijuana in 1992 or 1993.   (*Ibid.*)   On the other hand, the
14  
15  Governor noted that petitioner has been discipline free for 13
16  years, and he has made efforts to enhance his ability to function
17  within the law.   (*Ibid.*)   He has participated in vocational
18  training and participated in self-help therapy, including
19  Narcotics Anonymous, Alcoholics Anonymous, Anger Management, Peer
20  Education Program, and the Impact Program.   (*Id.* at pp. 2-3.)
21  Petitioner also maintains supportive relationships with his family
22  
23  and friends, and he received positive evaluations from mental-
24  health and correctional professionals.   (*Id.* at p. 3.)   He has
25  plans for living with his mother and working in a cigarette store
26  upon his release.   (*Ibid.*)   Thus, the Governor did concede that
27  petitioner has made some gains during his incarceration, but found
28  that the negative factors outweigh the positive ones.

1    Whether or not this court agrees with the Governor's

2  conclusion, his decision may not be overturned so long as it is

3  supported by "some evidence." (See, e.g., *In re Fuentes* (2005) 135

4  Cal.App.4th 152, *In re Shaputis* (2005) 135 Cal.App.4th 217, *In re*

5
   *Lowe* (6th Dist. 2005) 130 Cal.App.4th 1405, *Rosas v. Nielsen* (9th
6
7  Cir. 2005) 428 F.3d 1229, *In re DeLuna* (2005) 126 Cal.App.4th 585,

8  *In re Scott* (2005) 119 Cal.App.4th 871, *In re Van Houten* (2004)

9  116 Cal.App.4th 339, *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910,

10 and *In re Rosenkrantz* (2002) 29 Cal.4th 616.)    Here, the court

11 finds that there was at least some evidence that releasing

12 petitioner could pose an unreasonable risk to society or a threat

13
   to public safety, because of the violent nature of the original
14
15 offense, petitioner's violent conduct before the murder, and

16 petitioner's multiple disciplinary reports since becoming

17 incarcerated.

18    "[T]he particular circumstances of the commitment offense

19 can, by themselves, provide the 'some evidence' that is necessary

20 to uphold the Governor's decision. (*Rosenkrantz, supra,* 29 Cal.4th

21 at 677-679.)    The Governor can consider whether the offense was
22
23 committed 'in an especially heinous, atrocious or cruel manner'

24 (Regs., § 2402, subd. (c)(1)) in evaluating suitability for

25 parole." (*In re Lowe, supra,* 130 Cal.App.4th 1 at 1427.)    Also,

26 "it is [petitioner's] burden to demonstrate that the Governor

27 acted arbitrarily or capriciously in denying parole. (*Rosenkrantz,*

28 *supra,* 29 Cal.4th at 665, 672.) This is an extraordinarily high

1   standard and requires [petitioner] to show that there was not even

2   a modicum of evidence to support the Governor's decision.

3   (*Rosenkrantz, supra*, 29 Cal.4th at 627.)" (*Id.* at 1429.)

4       In the present case, the Governor's decision was supported

5   by at least some evidence, since there are facts on the record

6   
7   that tend to show that the underlying offense was "especially

8   heinous, atrocious, or cruel." Petitioner had engaged in a

9   pattern of violent abuse of his victim over the course of a year

10  before the fatal attack. He threatened to kill his wife, brought

11  a knife to her home, then broke into her house and stabbed her

12  multiple times. He also threatened to kill Mr. Jones, and he cut

13  Jones' hand. He covered the house in his victim's blood.

14  
15  Petitioner also attempted to minimize his culpability in his

16  wife's murder during the parole hearing by stating that he only

17  intended to harm Mr. Jones, despite many other facts to the

18  contrary. The Governor was entitled to disbelieve petitioner's

19  version of events, and to conclude that petitioner has not yet

20  taken full responsibility for his actions. This is not a

21  situation where the underlying offense was barely sufficient to

22  
23  meet the elements of the crime. (*In re Scott, supra*, 133

24  Cal.App.4th 573, 598.) Rather, the facts on the record tend to

25  show that petitioner acted with premeditation, and that he

26  deliberately and viciously stabbed his wife to death. In

27  addition, the Governor's decision mentions some disciplinary

28  problems after petitioner's incarceration. The Governor also

1  properly took into account the factors weighing in favor of

2  granting parole, but ultimately concluded that the negative

3  factors outweighed the positive ones.   Thus, the Governor's

4  decision to reverse the Board's grant of parole was based on at

5  least some evidence, and the court cannot overturn it.

6

7          The petition is denied.

8          **DATED this** 22nd **day of December, 2006.**

9

10                               **GARY S. AUSTIN**
                         _____

11                               **GARY AUSTIN**
                         **Judge of the Superior Court**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY MAIL

CASE NAME: <u>STRONG v. SCHWARZENEGGER</u>

CASE NO. : <u>C 07-4927 SI</u>

I, <u>Sylvester Strong</u> , hereby declare that I am a party to the above titled action and am over the age of eighteen (18), and I did serve a true copy of the following:

PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy in an envelope with first class postage fully prepaid and said envelope surrendered to correctional staff at the Correctional Training Facility for delivery to the prison mail room and therefrom delivered to the local United States Post Office the next business day from which there is postal service between the place of mailing and the addressee:

Amber N. Wipfler
Deputy Attorney General
455 Golden Gate Ave., #11000
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct, doing so this <u>4Th</u> day of <u>March</u> , 2008, at Soledad, California.

Sylvester Strong